## Hess's Executor *against* Hess.

A testator devised to his son John certain lands "valued unto him at the sum of 3350 pounds; 1000 pounds, part thereof, to remain charged on the land devised unto my said son John, during his natural life, and at his death, to be paid to whom my said son John shall bequeath the same, in and by his last will and testament." John made his will bequeathing the said 1000 pounds to A. B. and C., and afterwards sold the lands devised to him for their value, and died without revoking his said will: Held, that the bequest by the first testator was of a power of appointment, and that the legatees of John were entitled to recover in an action for the legacy against the executors of the first testator, with notice to the terre-tenants of lands discharged.

The subject of John's testamentary power was a chattel, separated from the land by his father's will. The probate of John's will was, therefore, conclusive, and could not be impeached in an action by his legatee to recover the legacy.

ERROR to the district court of *Lancaster* county.

This was an action of debt for a legacy by John Hess, a son of John Hess, deceased, against Peter Johns, executor of Christian Hess, with notice to Christian Hess, Jun., Thomas Taylor and others, terre-tenants.

Christian Hess died, having made his will, the material parts of which are as follow:

" And further, I do hereby give and bequeath unto my said beloved wife Anna, the annual legal interest of a principal sum of 800 pounds, which interest is to be paid unto her by my three sons, John, Christian and Jacob, as hereinafter mentioned, during her natural life or widowhood; but if my said wife should get married again and not continue my widow, then, and in that case, I order and direct, that my executors shall, as soon as conveniently can be done, pay unto my said wife, the sum of 200 pounds, lawful money of Pennsylvania, and from that time the said annual interest, herein before bequeathed unto her, shall cease and discontinue; to be paid unto her, in lieu whereof, she shall receive the said 200 pounds, all which articles and allowances herein before given, bequeathed and allowed, unto my said beloved wife Anna, I deem to be in lieu of her dower, or thirds in my estate, and besides that, she shall have no right or claim, in my estate, real or personal.

" Item.—I do give and devise unto my son John Hess, his heirs and assigns, all that certain stone house and barn, and five tracts or pieces of land, situate in Leacock, Earl and Salisbury townships, in the county of Lancaster, aforesaid; the one thereof, whereon the improvements are erected, situate in Leacock township, being bounded and described by the lines as follows: containing seven acres and thirty perches of land, be it more or less; the other tract situate in Leacock township, aforesaid, containing four acres, three quarters and twenty-seven perches of land, being the same, more or less; one other tract, situate in Salisbury township, aforesaid, contain-

ing thirty-nine acres, one half of an acre, and thirty perches of land, be the same more or less, one other of said tracts situate in Salisbury township aforesaid, containing five acres, one quarter of an acre and fifteen perches of land, be it the same, more or less, it being meadow ground; one other of said tracts being hill land, situate in Earl township, aforesaid, containing of land, be it the same, more or less; which several described tracts of lands, being parts and parcels of sundry larger tracts of land, which Samuel Houston, John Bitzer and Jacob Yoder, by sundry deeds of conveyances granted and conveyed unto me, as by said conveyances may appear; to hold the said, before described, five tracts, pieces or parcels of land, with their and each of their appurtenances, to my said son John Hess, his heirs and assigns forever, excepting and reserving the privileges of quarrying stones, for all kind of use on the herein before described tract of thirty-nine acres, two quarters of an acre and thirty perches, to, and for the use and benefit of my sons, Christian and Jacob Hess, their heirs and assigns forever, with the least injury to the said lands, with privileges to carry the same stones off the said lands, as often as occasion shall require; together with the free right and privileges, to water the meadow ground, on the said described tract of five acres, one quarter of an acre and fifteen perches, out of the head race of the mill, from the 1st day of February, to the 15th day of August, in each year, as much as is necessary to refresh the said meadow ground, and not to injure the mill in the least; and further, that my said son John Hess, his heirs and assigns, shall annually assist two days with one man at his own expense, to mend and keep in order, the mill dam, turning the water in said head race; and further, my said son John Hess, his heirs and assigns, shall have a right to make a bridge across the head race of the mill, at the most convenient place, for a road out of his fields, on the south side of said race, into his meadow on the north side of said race, by laying sleepers from bank to bank of said race, without erecting a pillar in the same race; further, subject to the water right, heretofore sold and conveyed to my son Jacob, for daming or swelling the water of Pequea creek, into and upon the lands herein before devised, to my son John, in manner and form as set forth in the deed, which I made to my son Jacob, and set forth, which several tracts of land, water privileges and premises, herein before devised unto my son John Hess, I value and appraise unto him at and for the sum of 3350 pounds, lawful money of Pennsylvania; 1000 pounds, part thereof, I order to remain charged, on the lands herein before devised unto my son John Hess, during his natural life, and at his death, the said principal sum of 1000 pounds to be paid unto my said son John's three oldest children, namely, Henry, David and Elizabeth, their heirs and assigns, in equal shares and parts, that is to say, each one third part thereof, 1000 pounds more thereof, to remain likewise charged on the lands, devised unto my said son John, during his natural life, and at his death to be paid to whom my said son John shall bequeath the same, in, and by his last will and testament; 266 pounds, 13

[Hess v. Hess.]

shillings and 4 pence, other part of the valuation money aforesaid, I order to remain charged also, on the premises, herein before devised unto my said son John, during the natural life or widowhood of my wife Anna, during which term my said son John Hess, his heirs and assigns, shall pay the legal interest annually of said sum, unto my said wife Anna, and at her death or marriage, the said principal sum to be paid to and for the use of my estate; 150 pounds, other part of the said valuation money, I order to be paid to my son John's present housekeeper, Sally Marstaller, at my son John's death, and the residue and remainder of the said valuation money, being 933 pounds, 6 shillings and 8 pence, I order my said son John Hess to pay to and for the use of my estate, in payments of fifty pounds, annually, on the 1st of May, in each year, till the whole is paid, beginning with the first payment thereof, on the 1st day of April 1810; and I further order and direct, that if my son John should die before the whole of the annual payments, payable by him out of the lands before devised unto him shall be paid—that in such case, all such annual payments as shall remain unpaid, and which shall not have come due, shall be paid immediately after the death of my said son John, in cash, and not in annual payments, as is herein before directed, in case my son John, survives so long.''

Defendants, to sustain the issue on their part, call Peter Johns, executor of Christian Hess, deceased, party to the record, to testify, and to this offer the plaintiff objected. It was admitted that P. Johns had settled up the estate of Christian Hess—had nothing to do by the will of the testator with the land charged with this legacy; Mr Johns never had the land in his possession, nor had any possible interest.

The plaintiff objected, that an executor or administrator defendant never can be received as a witness—that P. Johns is liable for costs by the pleadings: the judgment must be general.

And after argument, the court overruled the objection of the plaintiff, and admitted the said Peter Johns as a witness. To which opinion of the court, the plaintiff excepted.

Witness was then affirmed.

Defendants then offered to prove by him,

1. The value of the land devised to John Hess at various times, from 1817 to the 2d of April 1827.

2. That Christian Hess and Thomas Taylor, paid to John Hess the whole purchase money, and the full value of the land, including the legacies charged on it; that is, the clear value of the land, without reference to the charges as deductions—and that the legacy of 1000 pounds, part of which is sued for in this action, was paid to John Hess in the payment of the purchase money by Christian Hess and Thomas Taylor.

The plaintiff objected to the evidence on the ground of its being irrelevant; the court sustained the objection and the defendant excepted.

[Hess v. Hess.]

The defendants then further to maintain the issue on their part, offered as follows:

Power of attorney, of the widow and lawful children of John Hess, to Christian Hess, dated the 18th of October 1832, authorising him to sell the plantation in York county, and pay the proceeds to the children of Sally Marstaller, together with a mortgage given by John Hess, to Christian Hess and Thomas Taylor, on the York plantation, dated the 10th of April 1818; and a deed of Christian Hess to John Strobridge, consideration 1200 dollars, dated the 2d of April, 1834; with proof that previous to the sale to John Strobridge, the same property had been offered three times, between the time the power of attorney was given and that sale, the property had been put up for sale three times, and at one time no bid was offered, and at no other time was a bid offered as high as 1200 dollars; and also proof that John Hess, owned no other real estate, than this tract of land, in York county, and that his personal estate fell short about 200 dollars, of being sufficient to pay his debts; and that the deficiency was paid by Christian Hess; and that also, on the 2d of April 1827, the seventeen acres, twenty-two perches, sold by Thomas Taylor to Israel Bigelow, were not worth more unincumbered, than 3050 dollars.

This evidence was also objected to and rejected upon the same ground.

The defendants also offered a certified copy of the will of John Hess, from the register's office of York county, together with an offer to prove that the erasure, as appears in the certified copy, was in the original; that the lawful children intended to contest the will as cancelled, but Christian Hess interposed and prevented any objection being made, and said it would be right that Sarah Marstaller's children should get the proceeds of the property in York—that the will was then proved by Christian Hess; that these facts were stated to John Hess, the present plaintiff, who was told that he would not have got any thing but for this interposition of Christian Hess—and that his reply was, why did he put the will in the office—or words to that effect.

To which offer plaintiff's counsel objected, and the court sustained the objection, and overruled the testimony: and to this opinion of the court, defendants excepted.

The court (Hays, President) was of opinion that the plaintiff was entitled to recover, and so instructed the jury, who found accordingly.

*Champneys* and *Ellmaker*, for plaintiffs in error, cited *Powel on Powers*, 15, 368; 1 *Atk.* 465; 1 *Pr. Wms* 148; Morris *v.* Phaler, 1 *Watts* 389; Shaw *v.* M'Cameron, 11 *Serg. & Rawle* 252; 4 *Kent. Com.* 328.

*Norris*, contra, cited 1 *Roper on Leg.* 429; *Ram. on Wills* 1.

[Hess v. Hess.]

The opinion of the Court was delivered by

GIBSON, C. J.—The implication of absolute ownership from a general power of disposal, may be rebutted by the express gift of a lesser interest which is inconsistent with it. Such is the principle of Morris *v.* Phaler, and the cases from which it was extracted. But may it not be equally rebutted by any thing else which equally evinces an intent not to give the absolute ownership? The giving of a lesser interest is but one way of expressing an intent not to give the whole; and an implication from the gift of a disposing power, is not a conclusion of law, but a presumption of intention which stands but till it is repelled by an intention in any shape satisfactorily evinced to the contrary. The matter in hand, therefore, is to inquire whether such an intention is not discoverable in the case for decision. A father devises to his son a messuage and land, or, to speak more strictly, disposes of it to him by a testamentary sale for 3350 pounds, to be thus distributed. 1000 pounds are to be charged on the estate during the son's life, and paid to his legitimate children at his death. Another 1000 pounds (the money in suit) are also to be charged, and *paid to the son's appointee by will*. The testator further directs 266 pounds and a fraction, also to be charged, and the interest to be paid to his widow during her lifetime, or widowhood, the principal reverting to his estate at her death. He also directs 150 pounds to be paid to the son's housekeeper, the mother of the plaintiff, and other illegitimate children of the son; and he orders the residue to be paid to the use of his own estate during the son's lifetime. The inquiry then is, whether the words of the will limit a particular interest to the son, independent of the disposing power; and if not, whether any thing but a naked power was, in any event, intended to be given.

If an intent to restrain the effect of the power of disposal be not manifest, the ownership of the money must be taken to have been merged in the ownership of the land; and the object of the testator in endeavouring to keep them asunder, will be frustrated—a consequence to be resisted, if it can consistently with rules of law. It is not expressly said that the son was to have the money for life; but, what is in substance the same, it was to remain in his hands charged on the land; consequently he was entitled to the use of it, had he chosen to raise it in the mean time, or to the profits of it remaining in the land; and as a devise of profits is a devise of the land out of which they are to come, a bequest of interest is a bequest of the principal for the time being. But there is no express bequest to the son of the absolute property; and a contrary implication of equal force is sufficient to hinder the implication from the general disposing power. It is enough to hold it *in equilibrio* if an intention to give a particular interest can be collected from all the parts of the will. Now, that the son was to hold the principal free of interest, is clear from the direction to pay interest for the sum set apart in his hands for the use of the widow. The testator knew that to say no-

[Hess v. Hess.]

thing about interest was to relinquish it.  But as the principal was not to be called for in the son's lifetime, the particular form in which it might be enjoyed in the intermediate period, cannot be material, it being sufficient that it was essentially the same *corpus* that was to become the subject of disposition subsequently.  This material feature did not belong to the case of Morris *v.* Phaler, in which the subject of the power was to be the proceeds of a reversionary estate after the expiration of a distinct estate limited to the depository of the power.  Here the money, though not actually raised, was a present debt, and had a legal existence in the hands of the son, being charged on his land as a security; and it is not perceived how even an express bequest of the intermediate use of it, could have made the case stronger; yet it will be conceded that such a bequest would have rebutted an implication of ownership from the appointing power.

On that ground, therefore, the construction in favour of the plaintiff might be securely rested.  But that the testator meant not to give the entire ownership is irresistibly manifest from the fact that he thought proper to charge the money on the land.  Such a charge is more decisively evincive of intention than all that can be drawn from the inconsistency of giving a particular interest.  To have encumbered the son's land with a debt to himself, would have been absurd.  What would have been the purpose, or what the value, of the security?  It required not the money to be raised out of the land by the father, to enable the son to give it to his illegitimate children if they should be found worthy at their father's death.  That was not the object of the charge, but to secure the money to the testator's estate in case the son should omit to exercise the power.  But the security would be of little avail either to the testator's representatives or the contemplated objects of the power, if the son could have extinguished it by virtue of a general ownership.  To prevent a consequence so entirely subversive of the testator's design, it is necessary to say the son had—if not a particular interest—certainly no more than a naked power of appointment.

The subject of the son's testamentary power was a chattel separated from the land by his father's will.  It is scarcely necessary to say, therefore, that the probate of the son's will was conclusive, and that the evidence to impeach it was properly excluded.

Judgment affirmed.