(Decided 21st January, 1881.)

JAMES FOOS *vs.* WILLIAM W. SCARF, and others.

*Powers in Deeds and a Will—Parties to a Proceeding in Equity.*

In 1848, S. conveyed by deed certain leasehold property in Baltimore City, to A. G. R., in trust, for the sole and separate use of his wife A., "for and during her natural life," with power to receive the rents and profits thereof for her use and benefit, or to sell and dispose of the same or any part thereof absolutely, "so that neither the property nor the rents and profits or the proceeds thereof, shall at any time be subject to the control of S., nor be in anywise liable for his debts," and from and immediately after the death of A., "then in trust, as to the said property, or so much of the same as may remain undisposed of by her deed or contract, for the use and behoof of her issue, if any; and in the event of her death without

issue, then to revert to the said S., his heirs or assigns." In 1850, S. purchased from McL., trustee, other leasehold property in said city, and united with McL., trustee, in conveying it to W. R. R., in trust, for the sole and separate use of A., "for the term of her natural life without the let or control of her present or of any future husband she might have, and if she should survive her present husband, then after his death with power to grant, assign, sell or dispose of said premises either by deed or will, but should she depart this life before the said S., then and in such case for the use of the said S., and his assigns." In August, 1851, S. purchased from C. other leasehold property in said city, and by his direction, C. conveyed it to W. R. R., "in trust, for the uses and purposes mentioned and set forth" in the deed from McL. and S. In October, 1851, S. purchased from L. other leasehold property in said city, and by his direction, L. conveyed it to W. R. R., in trust, "for the sole and separate use of A. without the let or control of her present or of any future husband whom she might have, and if she should survive her present husband, then after his death, with power to grant, assign, sell or dispose of the said premises either by deed or will, and whether *sole or covert ;* but should she depart this life before the said S., then and in such case for the use of the said S., his executors, administrators and assigns." S. died in May, 1855, leaving a will executed in that month, by which he bequeathed to A., all his property for " her sole use and benefit during her natural life and to dispose of as she might think best ; " and he made her his executrix. A. afterwards intermarried with F. and died intestate, in October, 1877, without issue by either marriage, and without having sold or disposed of by deed the property mentioned. In a proceeding to obtain a decree for the sale of the leasehold property and for a distribution of the proceeds among the parties entitled, it was HELD :

1st. That, as by the deeds of 1848, 1850, August, 1851, and October, 1851, (though there was no express limitation of an equitable life estate to A. by this latter deed,) only equitable life estates were conveyed, with powers to A. of disposition superadded, which were not executed to the extent of affecting the property in controversy, F., the sole appellant, took no interest therein after her death.

2nd. That the power of disposition given to A. by S's will, under which she took a life estate in the property, not having been executed by A. the title to the property in controversy has not been affected by the will.

3rd. That there should be an administration *d. b. n.* on S's estate, and that such administrator should be made a party to these proceedings before the decree for a sale be executed, as, if any interest in the property reverted to S's estate, such administration would be necessary to give title to the distributees and to purchasers under the decree.

The intention to execute a power, either by will or any other instrument, must appear by a reference in the instrument to the power, or to the subject of it, or from the fact that the instrument would be inoperative without the aid of the power.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. By the deed from Clarke to Foos in December, 1878, therein mentioned, Clarke granted, bargained, sold, assigned, transferred, set over, quit-claimed and released, unto the said Foos, his executors, administrators and assigns, all the right, title and interest which he, the said Clarke, might have in and to the lot and premises described in the deed of August, 1851, from Clarke to Robinson set out in the opinion. And by the deed from Lanahan in December, 1878, mentioned in the opinion, Lanahan granted, bargained, sold, assigned, transferred, set over, quit-claimed and released, unto the said Foos, his executors, administrators and assigns, all the right, title, interest and estate, which he, the said Lanahan, might have in the lot and premises described in the deed of October, 1851, from Lanahan to Robertson, set out in the opinion.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*Joseph Blyth Allston,* for the appellant.

The bill is multifarious in that it seeks a construction of the deeds of trust adverse to Foos, and a sale for the purposes of partition, in which he is admittedly not interested at the same time. It is also multifarious in

asking the construction of two trusts totally distinct, the beneficiaries of which may be an entirely distinct set of people.  This objection may be taken by answer as is done here, as well as by demurrer.  *Trego, et al. vs. Skinner, et al.*, 42 *Md.*, 426; *Tartar, et al., Trustees vs. Gibbs, et al.*, 24 *Md.*, 323.

None of the complainants or respondents who claim as heirs of Scarf, are necessary or proper parties to the suit.  The property is confessedly all leasehold, and even if limited to the heirs, as is done in the deed to Alexander G. Robertson, it will nevertheless go to the executrix, and on her death to the administrator *de bonis non,* by whom alone the bill should have been filed.  If the objection be made that the word heirs may be used here as descriptive of a set of persons taking by purchase or limitation, the obvious reply is, that this only strengthens and illustrates the former objection of multifariousness, by showing the absolute necessity of a distinct proceeding in reference to the different property held under the different trust deeds in the case.  *Sheppard's Touchstone, p.* 76, *ch.* 5.

Upon the merits—The terms of the trust declared in the deed to W. R. Robinson are executed.  Mrs. Foos, having survived her husband, Scarf, took an absolute estate in the property, which on her death vests in her second husband.  The power is annexed to enable her to deal independently with the property in the event of her marrying again.  Any other construction presents a case not contemplated by the terms of the trust.  If this latter view obtain, then the property reverts to the grantors, Thomas M. Lanahan and George B. Clarke, whose deeds to James Foos vest the equitable title to the property in him.  *Lewin on Trusts,* 118, *et seq.*

*James W. Denny,* for the appellees.

The limitation in the will of George W. Scarf in favor of his wife is clearly defined to be a life estate, with a

power of disposition. No estate so definitely limited can be enlarged by implication into an absolute estate; such enlargement has only arisen by the conferment upon the devisee of a power of disposition, where the estate given was general or indefinite, in which case, "the devisee or *legatee* takes not a simple power but the property absolutely. But, when the property is given, as in this case, to a person expressly for life, and there be annexed to such gift a power of disposition," * * * * "then the rule is different, and the first taker in such case takes but an estate for life, with the power annexed; and if the person taking, fails to execute the power, and thus dispose of" the property, "it goes where there is no gift or devise over, to the heir or next of kin of the testator, according to the nature of the property."

Such is the ruling of this Court in *Benesch vs. Clark, &c.*, 49 *Md.*, 497. See *Smith vs. Bell*, 6 *Peters*, 72; *Boyd vs. Strahan*, 35 *Ill.*, 359; *Bradley vs. Westcott*, 13 *Ves.*, 450; *Brant vs. Va. Coal & Iron Co.*, 3 *Otto*, 332.

The doctrine laid down in *Benesch's Case* is applicable alike to fee simple and leasehold estates. The very question in that case was, as to the effect of a bequest to a widow for life, with power of disposition, upon a piece of leasehold property, and whether the power of disposition had been executed by an assignment, &c., by which the widow conveyed, to use the language of the Court, "the entire residue of the unexpired term, with the right and benefit of renewal from time to time forever."

Besides, the Court in its opinion, partly quoted above, recognizes the application to both classes of property, when, in providing for the transmission of the estate on the determination of the life interest, and a failure to execute the power, it says, that it goes "to the heir or next of kin of the testator, according to the nature of the estate."

So that by the application of the principles laid down by this Court, the express limitation of the estate given to Ann A. Scarf by her husband's will, prevents its enlargement by the superadded power of disposition.

It was necessary to make the administrator *d. b. n.* of George W. Scarf, a party to the bill filed in the cause. Clearly, under the deed of the Howard street property, the heirs of George W. Scarf take as *purchaser;* and as to all the property, only those of his heirs or representatives who were *in esse,* at the death of Ann A. Scarf or Ann Foos, without leaving issue or exercising the power of appointment as to the Howard street property, and as to the remaining property, upon a failure to dispose of it, would be entitled to share in the proceeds of its sale. *Buck vs. Lantz,* 49 *Md.,* 439.

In such case, the trustee, under the various deeds of trust, would hold for the benefit of the heirs or representatives, making themselves such at the time of the happening of the contingency; and a Court of equity having jurisdiction of the trusts, could execute and control the trusts and decree concerning them, without the administrator of George W. Scarf being before it.

If, however, the appellees, in the construction sought to be placed upon the different papers in the record, are sustained by this Court, and yet the Court should think that the administrator *d. b. n.* should have been made a party, the appellees ask that the Court will exercise the power under the provision of the Revised Code, sec. 51, p. 772, in order that substantial justice may be accomplished by remanding the record for amendment, having passed on the questions properly raised thereby.

MILLER, J., delivered the opinion of the Court.

The decree from which this appeal is taken determines that the leasehold property mentioned in the proceedings belongs to the heirs, distributees and legal representatives

of George W. Scarf, deceased, that the appellant, James Foos has no interest therein, and that the same be sold for the purpose of partition among the parties entitled thereto. The facts necessary to be stated are as follows:

1st. In February, 1848, Scarf conveyed by deed certain leasehold property on Howard Street in the City of Baltimore to Alex. G. Robinson, in trust for the sole and and separate use of his wife Ann Scarf *"for and during her natural life,"* with power to receive the rents and profits thereof for her own use and benefit, or to sell and dispose of the same or any part thereof absolutely, "so that neither the property nor the rents and profits or the proceeds thereof, shall at any time be subject to the control of the said George W. Scarf, nor be in anywise liable for his debts," and from and immediately after the death of the said Ann Scarf, then in trust, as to the said property or so much of the same as may remain undisposed of by her *deed or contract* for the use and behoof of her issue if any, and in the event of her death without issue, then *to revert back* to the said George W. Scarf, his heirs or assigns."

2nd. In October, 1850, Scarf purchased from Robert M. McLane, trustee, leasehold property on Pearl Street, and directed the trustee to convey, and united with him in conveying the same by deed to William R. Robinson in trust, for the sole and separate use of Ann Scarf, wife of the said George, *"for the term of her natural life* without the let or control of her present or of any future husband whom she may have, and if she should survive her present husband, then after his death with *power* to grant, assign, sell or dispose of said premises either by *deed or will,* but should she depart this life before the said George W. Scarf, then and in such case for the use of the said George. W. Scarf and his assigns."

3rd. In August, 1851, Scarf purchased leasehold property on Harford Avenue from George B. Clarke, and

directed Clarke to convey the same by deed (which was duly executed,) to William R. Robinson " in trust for the uses and purposes mentioned and set forth in " the deed from McLane and Scarf of October, 1850, above mentioned.

4th. In October, 1851, Scarf purchased another leasehold property on Boyd Street from Thomas M. Lanahan, and directed him to convey the same by deed (which was also duly executed) to William R. Robinson in trust " for the sole and separate use of Ann Scarf, wife of George W. Scarf, without the let or control of her present or of any future husband whom she may have, and if she should survive her present husband, then after his death with *power* to her to grant, assign, sell or dispose of the said premises either by deed or by will, and whether *sole* or *covert,* but should she depart this life before the said George W. Scarf, then and in such case for the use of the said George W. Scarf, his executors, administrators and assigns."

Scarf died in May, 1855, leaving a will executed on the third of that month by which he gave and bequeathed unto his wife Ann Scarf " all the property " he possessed " in this world, that is to say, all houses, lots, leaseholds, rents, money, and every thing of any value, to the said Ann Scarf for her sole use and benefit *during her natural life,* and to dispose of as she thinks best," and appointed his said wife sole executrix of his will. Mrs. Scarf subsequently intermarried with James Foos, the appellant, and died in October, 1877, intestate, without ever having had issue by either marriage, and without ever having sold or disposed of by deed, the property now in controversy. The parties claiming this property, are, on the one side, the appellant, the surviving husband, and on the other, the next of kin and heirs-at-law of George W. Scarf.

We think it very clear that by the deed of February, 1848, an equitable *life estate only* was conveyed to the wife with *power* to her to dispose of the property or any part of

it by deed or contract. It has been contended on the part
of the appellant that this power was executed by the
paper of the 20th of August, 1867. The rule by which
the execution of a power either by will or any other instru-
ment, is to be determined, is well settled. The intention
to execute the power must appear by a reference in the
instrument to the power, or to the subject of it, or from
the fact that the instrument would be inoperative without
the aid of the power. *Morey vs. Michael,* 18 *Md.*, 227;
*Society of Red Men vs. Clendinen,* 44 *Md.*, 429. Here
none of the requisites are to be found. The paper makes
no reference to the power contained in the deed, nor to
the property it conveys, and there is nothing to show
there was no other property upon which the instrument
could operate.

It is equally clear that by the deeds of October, 1850,
and August, 1851, only equitable *life estates* were con-
veyed to the wife with power to her, in case she survived
her then husband, to dispose of the property after his
death by deed or will, and it is not pretended that these
powers have ever been executed to the extent of affecting
the property now in controversy. So far, therefore, as
these three deeds are concerned, life estates only were con-
veyed with powers of disposition superadded, and as the
wife during her life never made any appointment or dis-
position of the property in favor of the appellant, it follows
that upon her death, he ceased to have any interest
therein. It is hardly necessary to add that the appel-
lant acquired nothing by the deed of December, 1878,
which he obtained from Clarke, for it sufficiently appears
from the proof that the purchase money for the whole
absolute interest in the property conveyed by Clarke's
deed of August, 1851, was paid by Scarf, and that that
deed was made by his direction. After the execution of
that deed Clarke had no further interest, legal or equitable,
in the property, nor was there any resulting trust in his

favor.    But the interest in the property which Scarf held either under the deeds themselves, or which he did not part with by them, provided the powers remained unexecuted, was undoubtedly an interest he could devise by will, and the question therefore is, did his wife take more than a life estate under the devise to her in his will, of all his property " for her sole use and benefit *during her natural life,* and to dispose of as she thinks best."

In the case of *Benesch vs. Clarke,* 49 *Md.,* 497, we decided in accordance with all the authorities, that where an estate is given to a person generally or indefinitely with power of disposition, such gift carries the entire estate, and the devisee or legatee takes not a simple power, but the property absolutely ; but where the property is given to a person expressly for life, and there be annexed to such gift a power of disposition of the reversion, the rule is different ; and in such case the first taker takes but an estate for life with the power annexed ; and if the person so taking fails to execute the power, the property goes where there is no gift over to the heir or next of kin of the testator, according to the nature of the property. Such is the rule as laid down by Chancellor KENT in *Jackson vs. Robins,* 16 *Johns.,* 588.    It is perhaps more clearly and concisely stated by Mr. Preston thus : " Grant that an *express estate* is limited, and a power of disposition either generally or in favor of particular persons is added, the person to whom the devise is made, will have merely the estate limited by *express words,* and the right in point of *power,* and not of *estate,* of disposing of the remainder," and as an instance of the application of the rule he cites as good law, a case very similar to the terms of the will before us :    " So a devise to one for life to dispose at his will and pleasure, gives an estate for life only ; for the words superadded to the limitation merely express an intention to authorize a power of alienation during that period for which an estate is devised in terms."    2

*Preston on Estates*, 82, 85. It was said by Sir WM. GRANT, the Master of the Rolls, in *Bradley vs. Westcott*, 13 *Ves.*, 445, " The distinction is perhaps slight between a gift for life, with a power of disposition superadded, and a gift to a person indefinitely with a superadded power to dispose by deed or will, but that distinction is perfectly established." Besides the authorities cited in *Benesch vs. Clarke*, the same distinction has been recognized and adopted in the following cases, some of which are very similar to the present, and we refer to them as sustaining the rule approved by Chancellor KENT. *Nannock vs. Horton*, 7 *Ves.*, 392; *Reid vs. Shergold*, 10 *Ves.*, 370; *Morris vs. Phaler*, 1 *Watts*, 389; *Hess vs. Hess*, 5 *Watts*, 191; *Smith vs. Starr*, 3 *Whart.*, 62; *Girard Life Ins. Co. vs. Chambers*, 10 *Wriyht*, 485; *Second Reformed Church vs. Disbrow*, 52 *Penn. State Rep.*, 219; *Downey vs. Gordon*, 36 *N. J. (Law Rep.*,) 460; *Andrews vs. Brumfield*, 32 *Miss.*, 115; *Boyd vs. Strahan*, 35 *Ill.*, 359; *Smith vs. Bell*, 6 *Pet.*, 72; *Brant vs. Virginia Coal & Iron Co.*, 3 *Otto*, 332. Applying then this rule of construction to the will before us, we are constrained to hold that it gives only a life estate to the wife with a superadded power of disposition, and as that power has never been executed with respect to the property in dispute, the present title to that property stands unaffected by this will.

This leaves for consideration and construction the deed of October, 1851, by which the Boyd street property was conveyed. In that deed there is no express limitation of an equitable life estate to the wife, but the trust in her favor contains no words of limitation, and the deed was executed prior to the passage of the Conveyancing Act of 1856, ch. 154, and prior to the adoption of the Code which by Article 24, sec. 11, dispenses with the necessity of inserting words of inheritance in a deed in order to pass fee. It is true that before the enactment of these laws, the rule was not so universal and imperative as to require

the Courts to hold that such words must be used in every deed, or a life estate only, and not a fee will pass. If in a particular case, it plainly appears from the terms and provisions of the deed itself, the purposes it was designed to subserve, and the circumstances under which it was executed, that the *intention* was to convey an absolute estate ; such an estate will pass without the use of words of limitation. *Merritt vs. Disney,* 48 *Md.,* 344. But we can discover in the terms and provisions of this deed, no such manifest intention to grant to the wife more than an equitable life estate, as would justify us in dispensing with the general rule. The present title therefore to the property described in this deed follows that of the property mentioned in the other conveyances. The same observations that were made in regard to the deed of December, 1878, from Clarke to the appellant, hold good as to the deed which he, at the same time, obtained from Lanahan. The result then is that the appellant has no interest in any of the property in controversy.

We agree with the Court below, that the bill in this case is not open to the objection of multifariousness, but we think there should be an administration *de bonis non* on the estate of George W. Scarf, and that such administrator should be made a party to this suit before the decree for a sale is executed. The property is entirely leasehold, and if any interest therein after the death of his wife, reverted or fell back into his estate, such an administration is indispensably necessary in order to give a good title to the distributees. *Alexander vs. Stewart,* 8 *G. & J.,* 226 ; and to the purchasers under this decree. We do not mean now definitely to determine the construction of either of these deeds with respect to the interests of any of the parties, other than the appellant thereunder, for that question is not regularly presented by this appeal, which was taken by the appellant alone. All that we mean to decide is, that as the presence of the

administrator *de bonis non,* will remove all difficulty as to the validity of the title to be acquired by a purchaser under the decree, and place the property in the market free of all doubt as to the title to be sold, he should for this reason if for no other, be made a party to the suit before that part of the decree which directs a sale is executed. It was stated and conceded in argument, that such administrators had already been appointed, and in order that they may be brought in and made parties, the cause will be remanded under Article 5, sec. 28 of the Code, without affirming or reversing the decree appealed from.

*Cause remanded.*

(Decided 21st January, 1881.)