## Rockett's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Charles Lakatos* of *Freedman & Goldstein*, for exceptants.

*J. Channing Ellery* of *Rambo & Mair*, contra.

BOLGER, J., November 27, 1942.—Testator died May 13, 1934. His will was probated and letters testamentary granted by Harry M. Dougherty, Esq., Register of Wills of Philadelphia County, on June 4, 1934. No appeal was taken from the decree of probate, the issue before us arising upon exceptions to the adjudication and to the re-adjudication of the first account of the executors. The awards exclude grandchildren of testator—the children of a son who predeceased the testator—on the ground that the paragraph of the will under which they claim was revoked by certain marginal marks and writings opposite the paragraph in question, admittedly made after the execution of the will. Words being inadequate to describe the portion of the will in dispute, a facsimile of it is presented:

The marginal marks and writings are all in black pencil except the small jagged line in the left column closest to the margin line which is in red pencil.

The only testimony directly pertaining to the origin and significance of these marginal additions was taken before the auditing judge, no attempt having been

made to establish their origin before the register, whose decree of probate admits the writing in its entirety, including the marginal notes, as the will. Such decree contains no mention of revocation of any part of the will, but the record contains the affidavits of the subscribing witnesses wherein they aver "the above witnesses did not see changes made on first and second pages of will at time of execution of said will." The disputed matter is on page 2. The petition of the executors for probate and for letters testamentary estimates the personalty to be of the value of $2,500, and real estate, 62 pieces or parcels, of the value of $50,000, as near as can be ascertained.

The court en banc, after argument on the exceptions to the adjudication in which revocation was sustained, referred the question back to the auditing judge to complete the testimony and to make additional findings as to the source and effect of the marginal notations. The auditing judge heard such additional testimony at a re-audit and has now readjudicated the account affirming his previous decision.

Exceptants objected to the testimony before the auditing judge, to prove the origin of the marginal additions, that the present issue is one of construction and not of probate; that the testimony as to the marginal writings before the auditing judge amounts to a collateral attack upon the decree of the register admitting the will to probate, and that the action of the auditing judge in holding that the marginal marks and writings constituted a writing revoking the disputed paragraph of the will is error since it attempts to vacate or amend the decree of probate which it is beyond the power of the auditing judge to do.

In overruling exceptants' objections to the testimony, the auditing judge observed that while the subject "is technically a matter of probate, it may also be determined under present practice upon distribution of the estate", citing White's Estate, 31 D. & C. 8, and indi-

cating that "confusion exists among the authorities regarding the jurisdiction of our courts to decide probate questions at the audit of accounts dealing with personalty". This latter statement standing alone is inexact because it is incomplete, and for other reasons stated later herein. In the cited case the question is correctly stated by Van Dusen, P. J. (p. 13) :

"In my opinion, it would be well to make a distinction between the validity of alterations and their construction and effect. Probate should be conclusive that alterations were made by the testator himself, and that they were executed according to law."

He then recognizes the irregularity of taking up such questions at the audit of accounts when he states:

"If validity is not made conclusive by probate, then the will may be attacked as to personal property at the settlement of the executor's account, and as to real estate in any proceeding involving the title, perhaps long after the period for appeal has expired. Construction of the altered will is properly a question of distribution; and this alone should be excepted from probate."

It also appears upon examination of the exceptions that no question was raised as to the authority of the court to pass upon this issue, and finally the auditing judge states: "In the present case, it is not necessary to determine whether probate is conclusive as to the alterations." By its own terms, therefore, the case does not stand for the doctrine for which it is cited.

The inexactitude of the statement that "confusion exists among the authorities regarding the jurisdiction of our courts to decide probate questions at the audit of accounts dealing with personalty" arises from a misreading of the cases ruling the question, and a misstatement of the problem, i. e., in confusing it with the distinction between questions of probate and of distribution. The decisions of the courts are uniform on the principle that, once it is determined that the issue is one of probate, there is no doubt that jurisdiction is for the

register, whose decree is final unless appealed from. On the other hand, the distinction between matters of probate and of construction or distribution is real and has continually occupied the attention of our courts.

An authoritative statement of the difference in jurisdiction is contained in Carson's Estate, 241 Pa. 117, at page 121:

"The probate of a will without regard to its provisions is one thing; distribution of the estate of the testator in accordance with its terms is another. The former is for the register; the latter is none of his concern. Distribution is for the court alone, and, on distribution, and not before, is the validity of the provisions of a will to be passed upon. It may safely be said that no more competent or learned judge in this State ever passed upon questions relating to the distribution of decedents' estates than the late Judge Penrose, of the Orphans' Court of Philadelphia County, and what he considerately decided has always carried with it the weight of high authority . . . 'Whether the dispositions contained in a will, where the testamentary capacity of the testator is unimpeached, are valid or not, are questions with which the register of wills has no concern, if the will, itself, has been proved in the manner permitted by law; and the order admitting it to probate can have no effect, therefore, upon the subsequent consideration of the questions when the estate comes before the court for distribution. This is very clear where the ground of invalidity is the creation of a perpetuity, or an accumulation contrary to the act of assembly, and, as we think, no less clear where a gift to a charity is attacked because the will was not executed a calendar month before the testator's death, or was not attested by two credible witnesses, or that the witnesses were not, at the time of such execution, disinterested. Such facts have no bearing upon the question of probate, which may be, and frequently is, demanded simply upon proof by two witnesses of the

signature of the testator. . . .' Evans's Est., 12 Pa. D. R. 694."

Prior to the Act of April 22, 1856, P. L. 532, decrees of the register were recognized as final with respect to personalty, but were merely prima facie evidence of the title to realty, with the result that questions of title to real estate involved separate proceedings as to every individual parcel: In every such proceeding the validity of the will was subject to contest as to every possible element—execution, testamentary capacity, undue influence, forgery, etc., and it was not uncommon for conflicting judgments to be given regarding the disposition of different pieces of real estate under the same provisions of the same will.

The Act of 1856 corrected this anomaly by giving the register's decrees the status of judicial findings: see Wilson et al. v. Gaston et al., 92 Pa. 207. That act provided that the probate of a will should be as effective thereafter as to real estate as it was theretofore as to personalty, and that decrees of probate became absolute if unappealed from after five years from the date of entry. This time limitation was reduced to three years by the Act of June 25, 1895, P. L. 305, and is now two years under the prevailing Register of Wills Act of June 7, 1917, P. L. 415, sec. 16(a). This last-named act reads as follows:

"The probate, or refusal of probate, by the register of the proper county of any will, or any other paper purporting to be a will or codicil thereto, shall be conclusive as to all property, real or personal, devised or bequeathed by such will or codicil or other paper, unless, within two years from the date of such probate or refusal of probate, those interested shall appeal from the decree of the register as herein provided: Provided, That all persons who would be sooner barred by this section taking immediate effect shall not be thereby barred before two years from the date hereof."

As to personalty, the register's decree of probate has always been regarded as final before as well as after the Acts of 1856, 1895, and 1917, supra: Loy v. Kennedy, 1 W. & S. 396 (1841); Hess's Executor v. Hess, 5 Watts 187; Thompson v. Thompson, 9 Pa. 234 (1848); Bunce v. Galbrath, 268 Pa. 389; and numerous other cases cited hereinafter.

Some slight difference appears in the earlier cases regarding the finality of the register's decree. Widdowson's Estate, 189 Pa. 338, and Wood's Estate, 247 Pa. 377, cited in White's Estate, supra, declare alteration a question of distribution. However, examination of those cases discloses fatal defects in their reasoning and conclusions. Wood's Estate involved the cancellation of a will, the question being raised upon petition, answer, and replication; the procedure was held to apply upon the authority of Widdowson's Estate. However, Widdowson's Estate was an issue devisavit vel non or probate proceeding wherein the court found (p. 340) that the complaining party had no interest in the dispute, thus eliminating from the decision any force it might otherwise bear; also its holding that the question of whether there were alterations in the figures of two or three legacies is one that can only arise upon distribution of the estate is not supported by the authorities it cites, viz, Jarman on Wills, 36, and Cuthbertson's Appeal, 97 Pa. 163. The Jarman citation reads that the question will be left to a jury in the case of real estate and to the judge in the court of probate in the case of personalty; while Cuthbertson's Appeal was a probate proceeding where the opinion in holding that undue influence may be applicable to a single provision of a will, leaving the rest of the will to stand, contains nothing to indicate that such a question is one of distribution. Consequently, it is patent that the case is ill-considered dicta and that Wood's Estate, supra, cannot be taken seriously.

There are several cases not cited, however, where questions of alterations were disposed of upon audit of accounts: Linnard's Appeal, 93 Pa. 313, Tomlinson's Estate, 133 Pa. 245, which is the outstanding case on obliterations by lead pencil, Hughes' Estate (No. 2), 319 Pa. 326 (the last of these covers several points related to the instant case), also Lindeman's Estate, 141 Pa. Superior Ct. 225, involving cancellation of a share of residue by drawing a line through the name of one of the original beneficiaries. The reports of these cases do not disclose that the question of jurisdiction was raised or discussed in the opinions. Likewise in Sarver's Estate, 324 Pa. 349, cited by accountants, the interlineations were construed in an accounting proceeding, but the court said (p. 351):

"No issue is made of the correctness of the probate of the will. Since two years have passed without appeal no successful challenge can now be made: Act of June 7, 1917, P. L. 415, section 16(a). We assume the regular execution of the entire will and the insertion of the changes prior to the execution."

In other words, the addenda were accepted and the decree of the register clearly stated that they were part of the will of testatrix. In the instant case it is clear that the addenda were apparently not on the will at the time of execution and the decree of the register fails to state whether or not they are part of the will.

Express exceptions to the two-year rule are cases involving fraud or forgery as exemplified by Culbertson's Estate, 301 Pa. 438, or where probate is made under an assumed name: Taylor's Estate, 306 Pa. 7.

The following cited cases all recognize that probate jurisdiction ends with the unappealed decree of the register and emphasize the distinction between matters of probate and of construction or distribution. Among instances regarded strictly for distribution are Hegarty's Appeal, 75 Pa. 503, and Hickman's Estate, 308 Pa. 230, validity of charitable bequests; Brooklyn

Trust Co. v. Warrington, 277 Pa. 204, ambiguities in general; Shestack's Estate, 267 Pa. 115, and Craft's Estate, 164 Pa. 520, as to subsequent marriage or after-born child; McClure's Estate, 309 Pa. 370, implied revocation by later will; Appeal of Reichard et al., 116 Pa. 232, May's Estate, 259 Pa. 115, and Conner's Estate, 29 Dist. R. 636, effects of revocation of share of residue. In the five last-cited cases, the instruments involved had been probated but the construction of the writings was left open by the register. See other authorities cited in I Hunter's Pa. Orphans' Court Commonplace Book, under Codicils, pp. 129-133, incl. Matters held peculiarly for probate: Koehler's Estate, 316 Pa. 321, revocation by last will; Sebik's Estate, 300 Pa. 45, and Cochran v. Young, 104 Pa. 333, alleged later wills; Stout v. Young, 217 Pa. 427, alleged minority of testator; McWilliams' Estate, 259 Pa. 526, alleged fraudulent alterations; Ford's Estate, 301 Pa. 183, revival of will upon destruction of codicil which revoked the will; Dixon's Appeal, 55 Pa. 424, cancellation and interlineations; Bunce v. Galbrath, supra, infancy of contestant and alleged undue influence and testamentary incapacity of testator; Seiter's Estate, 265 Pa. 202, Davis' Estate, 344 Pa. 520, Baker's Estate, 331 Pa. 33, Rosenthal's Estate, 339 Pa. 488, all of which involved substitution of words, pages, etc., in will; Morrow's Estate (No. 1), 204 Pa. 479, and De Haven's Estate (No. 2), 207 Pa. 152, alterations validated by codicil republishing will; Bogart's Estate, 96 Pa. Superior Ct. 26, one page of will on folded paper excluded; Cuthbertson's Appeal, supra, and White's Estate, 262 Pa. 356, undue influence; Williams' Estate, 336 Pa. 235, effect of unsigned writings of the testator upon blank page and on top of page of will; Bowlby v. Thunder, 105 Pa. 173, purely precatory codicil. Of the above-cited cases, the following have peculiar application to the instant case and hold that problems of partial revocation are likewise questions of

probate: Cuthbertson's Appeal, undue influence as to a single provision; Rosenthal's Estate, validity of first page of a two-page writing connected with admitted page by a nonperforating clip and internal reference; Bogart's Estate, excluding third page of a folded paper comprising four pages; Baker's Estate, unsigned paper pinned over certain canceled provisions as substitute. Williams' Estate must be regarded as controlling since it involves an attempted revocation in writing which was held ineffective because the testator's marginal notes were unsigned. Also Baker's Estate is of particular importance.

A review of these decisions results in the conclusion that the duty of the register in probate proceedings is threefold: (1) To determine if the instrument presented for probate is testamentary—is it a will? (2) Was it properly executed? (3) Is there anything on its face effecting a revocation of it, in whole or in part?

Therefore, the distinction in jurisdiction is not merely technical, nor are the authorities on the subject of jurisdiction in confusion.

The register, as well as the parties, no doubt misapprehended the effect of the register's action, for we have every confidence they did not foresee what mischief would follow. The foregoing discussion has demonstrated the great seal of authority reposing in the register's decree, and that from it stems the disposition of all property left by the testator—in this case 62 parcels of realty and the personalty. Since the real estate passes directly from the testator to the devisees, the register's decree constitutes a cloud upon the title to every piece of it which may result in much vexatious and otherwise unnecessary litigation. Thus is revived the mischief cured by the Act of 1856.

Both the register and the parties are responsible for this situation. It is no answer for the register that the parties raised no issue before him, which they should have done, or that no appeal was taken from his decree,

which should have been taken. Possibly each side took no action because each felt the question would be resolved in his favor. But they failed to ask themselves when and how often the question would have to be raised and whether the tribunal in which it became an issue would have jurisdiction to determine it.

The law of the State of New Jersey is a step in advance of our law on this subject. There the "Surrogate shall admit wills to probate and grant letters testamentary except where doubts arise on face of will or a caveat is put in or dispute arises as to existence of will, in which event the surrogate shall issue citations to all persons concerned to appear in the Orphans' Court." Rev. Stat. 3: 2-22. "Doubts on the will" have never been defined by the courts except to say that erasures, interlineations, attempted cancellations or doubts as to its testamentary character are included: In re Myers' Estate, 69 N. J. Eq. 793, 64 Atl. 138; Crawford et al. v. Lees et al., 84 N. J. Eq. 324, 93 Atl. 201.

Some interesting observations on the English law are contained in I Williams on Executors (11th ed.), pp. 233, 234:

"If a Will, bearing date on or after January 1, 1838 [the effective date of the Wills Act], has upon the face of it any unattested obliteration, interlineation, or alteration, the practice is to require an affidavit, showing whether they were made before or after the execution of the Will.

"Where alterations are satisfactorily shown to have been made before the execution, it is usual to engross the probate copy of the Will *fair*, inserting the words interlined in their proper places, and omitting words struck through or obliterated. But in cases where the construction of the Will may be affected by the appearance of the original paper, the Court will order the probate to pass in *fac simile*. And it appears to have been sometimes supposed that the grant of such a probate leaves it open to a Court of Construction to

inquire whether such alterations of the Will were made under such circumstances as to be effectual. But it is plain, it would seem, that unless the Court of Probate had adjudged that the obliterations or other alterations had been effectually made, the decree would have been for probate of the Will in its original state. A *fac simile* probate, therefore, of a Will made after the Wills Act came into operation is conclusive in the Courts, that the Will was in that state before its execution, *i. e.*, that the testator duly executed it . . ."

Although our legislation does not require our registers to initiate contests, nevertheless, they have the power to do so and to certify to the orphans' court any "disputable and difficult matter" under section 19 of the Register of Wills Act of 1917. The structure of the judicial branch of the administration of wills and decedents' estates is created like every other part of the judicial system of our State and Nation for the purpose of doing justice under the law between the parties to litigation, and this cannot be done under the due process clause unless everyone has his day in court. It is for this reason that this court never proceeds to hear will contests until all *possible* parties are notified. We regard the proceeding as being "in rem", i. e., all the world on one side versus the goods of the testator as represented by his alleged will on the other side. In this way only can finality be given to the proceeding. We, therefore, commend to the register the employment of his powers to withhold action in doubtful probate cases until after hearing, or to avail himself of section 19 of the Register of Wills Act of June 7, 1917, P. L. 415, in "disputable and difficult" matters. We also suggest the use of "copy fair" as described in the foregoing extract from Williams on Executors as a means of unequivocal elucidation of the register's decree of probate.

The statute in question is one of repose. Its purpose is definitely to set at rest all questions of the validity of

wills in order that rights arising under them may be free from subsequent attack. Postponing or deferring the question of probate until the audit of the executor's account, or proceedings to test the title of real estate, only circumvents and eventually nullifies the statute and does by indirection what the act forbids being done directly.

It is eminently plain from the foregoing authorities that the learned auditing judge was restricted at the audit of the executor's account to the application of the testator's wishes as expressed in the will, not as found by the auditing judge, but as determined by the register. It was his function to construe the instrument presented to him with the register's specific finding and without any authority in him as the auditing judge to take any testimony or to deliberate the matter further than appears on the face of the instrument itself and in the register's record. The exceptants, therefore, are correct in their position that the taking of testimony at the audit was objectionable in that it constituted a collateral attack upon the decree of probate and that the finding of revocation based thereupon was error.

Following study of the arguments upon exceptions, which led to the conclusion that the problem is one of probate, the court found itself faced with another problem of procedure in its endeavor to insure full justice to all of the parties. This problem embraces the following alternatives: Should we now (1) construe the register's decree, or (2) refuse to audit the account because the register's decree as to the disputed paragraph lacks the necessary certainty to constitute a valid judgment—is equivocal and, therefore, a nullity.

The first of these possibilities eliminates itself for the selfsame reason we hold the auditing judge lacked the authority to take such action, it constitutes a collateral attack upon the will.

As to the second of these possibilities, the question is whether this court is properly informed with certainty and singularity by the register's decree whether paragraph 4(a) of the will is or is not revoked. Obviously, the distribution of the estate cannot be made without that question being determined. The question of revocation depends, as the parties seem to agree, upon whether the marginal notations constitute a codicil or "other writing" within the meaning of section 20(a) of the Register of Wills Act of 1917. See Harrison's Estate, 316 Pa. 15.

The following authorities illustrate the necessity for certainty in judgments as well as in pleadings and constitute, we believe, ample authority to support the conclusion that the decree of probate is equivocal.

Freeman, in his Treatise of the Law of Judgment, 126, §72, states:

"Inasmuch as the judgment and its enforcement is the end and aim of the whole litigation, to satisfy this purpose it must so dispose of the matters at issue between the parties that they and such other persons as may be affected, will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined. While no very definite test of certainty can be laid down, obviously a judgment must be sufficiently certain to be susceptible of enforcement in the manner provided by law. It must be in such form that the clerk is enabled to issue an execution upon it, which an officer will be able to execute."

In much the same vein it can be said that the decree of the register in probating wills must be so certain and definite that it may be relied upon at the audit of the account of the fiduciary without the necessity of inquiring into any question properly involved in a probate proceeding. It is obvious that the judgment of probate in this instance does not permit of such action.

In Clineff v. Rubash et al., 126 Pa. Superior Ct. 82, a judgment was entered against an additional defendant for want of an appearance. However, it did not appear whether he was jointly or severally liable with the original defendant under the Act of April 10, 1929, P. L. 479, or solely liable under the Act of June 22, 1931, P. L. 663, sec. 2, as amended by the Act of May 18, 1933, P. L. 807. The judgment was, therefore, held a nullity.

In Bowers v. Gladstein et al., 317 Pa. 520, a sci. fa. to bring upon the record an additional defendant was held bad for duplicity where it alleged in one place the proposed additional defendant was solely liable and in another that he was jointly and severally liable with the original defendant.

In Smith et al. v. Bergdoll, 104 Pa. Superior Ct. 49, a joint judgment entered upon a verdict of a lump sum in favor of two plaintiffs was stricken off. It was held defective because the shares of the plaintiffs were not separately stated.

In Grakelow v. Kidder, 95 Pa. Superior Ct. 250, judgment was entered in an amicable action upon a lease for rent for the balance of the term. The description of the premises did not include the street, city, county or State, which information was added by the attorney who entered the judgment. Held, the judgment was null and void and it was consequently stricken off because it was vague and indefinite.

"Equivocal" is defined by Webster as "a word of expression capable of different meanings; an ambiguous term . . .". Oxford English Dictionary: "Having different significations equally appropriate or plausible; capable of double interpretation; ambiguous". 30 C. J. S. 1132, citing Black's Law Dictionary: "Having a double or several meanings or senses". In our opinion, these definitions accurately describe the character of the disputed passage of the will. Further, the diversity of construction suggested by the parties ef-

fectually convicts them of equivocation and we must hence conclude that the subject of their equivocation is equivocal.

For these reasons we find that the decree of the register is null and void.

We are of the opinion, furthermore, that lapse of time will not prevent either one or both of the parties from appealing to this court from the decree of probate: Haverford Township School District, to use, v. Herzog et al., 314 Pa. 161; Clineff v. Rubash et al., supra.

The initial remedy is appeal, because we do not have the will before us in a probate proceeding and because the register, having once rendered judgment, has no jurisdiction to vacate or reopen his decree: Mathews v. Biddell, 8 Pa. Superior Ct. 112.

This court may, upon appeal, vacate the decree of the register, reopen the probate, or direct that the cause be heard de novo by him. The inherent equities involved require a full hearing of all of the evidence concerning the origin of the marginal notations and a judicial determination based thereon.

We, therefore, decline to audit the account until an appropriate decree of probate is entered.

The exceptions are accordingly sustained and the audit of the account is continued.

SINKLER, J., dissenting.—The opinion of the majority of the court fails to give full effect to the decree of probate of the register of wills. It concludes that the marginal notations relied on as establishing a revocation must be ignored, because not expressly referred to in the decree of probate. On the contrary, it is my opinion that the decree of probate, in the absence of an express statement to the contrary, admitted to probate every word on the writing referred to in the decree as the accompanying will of the decedent. This included the marginal notations and removed from this court the

consideration, except on direct appeal from the decree of probate, of all questions whether the notations had been made by decedent and whether this fact had been established by the degree and kind of proof required by law. As a result, the auditing judge properly exercised jurisdiction to construe the effect of the notations on the dispositive provisions of the will, for the latter, as modified by the notations, constitutes the true will of decedent. In the construction of the notations and the dispositive provisions, the auditing judge possessed the same jurisdiction to hear testimony as in any other case involving the construction of a will.

The majority opinion refers to the cloud cast by the existence of such jurisdiction on rights otherwise made final by the lapse of the period in which an appeal may be taken from the probate of a will, and emphasizes the point that the limitation on the appeal period was adopted for the express purpose of avoiding such uncertainty. This reason addressed to convenience and the purpose of the legislature should not be adopted to divest the court of jurisdiction if it possesses jurisdiction. Moreover, the majority opinion, based on the objective of giving finality to the decree of probate when the appeal period has expired, defeats that objective by concluding that, although the time for appeal has expired in this case, an appeal may be taken from the decree of probate. In place of the desired finality, the majority opinion produces what, in my opinion, is needless circuity of action.

The sustaining of the action of the auditing judge will not work any hardship or prejudice any interest. The parties by their own statement have submitted all the evidence available on the questions determined by the auditing judge. To remand them to an appeal from probate would result only in the duplication on that appeal of the record now before the court. As to the effect of this decision on the finality of rights based on a decree of probate unappealed from within the statutory

period, no harm will follow. The view of the auditing judge, if adopted by the court, would serve as a warning to all parties interested in any will to make certain that the decree of probate makes specific reference to any notations thereon which might have the effect of revoking any provisions of the will. It is preferable to place on parties interested in a will the burden resting on every litigant to be vigilant in the protection of his own rights rather than, as is done by the majority opinion, divest this court of jurisdiction which I believe it possesses.

In the majority opinion it is stated that the court is faced with the "following alternatives: Should we now (1) construe the register's decree, or (2) refuse to audit the account because the register's decree as to the disputed paragraph lacks the necessary certainty to constitute a valid judgment—is equivocal, and, therefore, a nullity." The first alternative is then eliminated on the ground that it constitutes a "collateral attack upon the will".

The proposition that a construction of a decree is a collateral attack on the decree cannot be sustained. Whenever the plea is made that a former judgment is a bar because of the principle of res judicata, the court in which that plea is made must examine the judgment in the former action to determine just what was there decided. This is not a collateral attack, for it does not seek to contradict anything that was established by the former action but only seeks to ascertain what was in fact decided.

The majority opinion concludes that the decree of probate was equivocal and, therefore, null and void. The quotation made from Freeman on the Law of Judgments, in support of this conclusion, does not appear controlling. The decisions of Clineff v. Rubash et al., 126 Pa. Superior Ct. 82, and Bowers v. Gladstein et al., 317 Pa. 520, cannot now be regarded as authority, for they have been repudiated by the Supreme Court in

adopting the Rules of Civil Procedure governing the Joinder of Additional Parties (Pa. R. C. P. 2252 et seq.), which expressly authorize that which those decisions denied. This has been recognized in Rau v. Manko et al., 341 Pa. 17 (1941). Moreover, those decisions related to the interpretation of the Scire Facias Act of 1929 and applied to proceedings thereunder the strict common-law prohibition against duplicity in pleadings. The orphans' court has generally been considered to be unfettered by these strict concepts of common-law pleading. The decision of Smith et al. v. Bergdoll, 104 Pa. Superior Ct. 49, related to the form of a judgment to be entered where two plaintiffs had brought suit. Grakelow v. Kidder, 95 Pa. Superior Ct. 250, related to the averments or pleadings required to support a judgment entered by confession. Neither of these last two cases is here controlling, for they were both cases in which the court which entered the judgment was passing on the sufficiency of the judgment. The instances are many in which the court which entered a judgment will condemn it as void because of a defect in form, whereas the same defect will be termed voidable and not subject to attack when the question is raised in another court. Freeman on Judgments, cited by the majority opinion, and the chapter on collateral attack in Finletter, Corporate Reorganization, make it clear that there are many defects which make a judgment voidable in the court in which it was rendered, but which cannot be attacked in another court, even though the judgment would be called "void" by the former court, because such act would constitute a collateral attack on the judgment. The two cases last cited, while perhaps authority were this matter before us on an appeal from the probate of the will, cannot be regarded as controlling now.

The alternatives confronting the court are not those quoted above from the majority opinion. The alternatives confronting the court are: Does the silence of the

decree of probate as to the existence of the marginal notations have the effect of a judicial determination that such notations do not exist, or of a judicial determination that the notations exist and have been proved to be valid to the satisfaction of the register? The majority opinion states that we cannot answer these alternatives and that the solution of the problem is to hold that the decree of probate is null and void, and that the statute prescribing the period in which an appeal may be taken can be ignored and the parties permitted now to appeal from the probate.

In the absence of clear authority that we lack jurisdiction to answer this question, I dissent from the majority opinion.

The view of the majority of this court is in conflict with the action of the Supreme Court in Sarver's Estate, 324 Pa. 349 (1936). In that case decedent, by the fourth and fifth paragraphs of her will, directed that all her real estate be sold and the proceeds divided among her children. By the second paragraph decedent's daughter was given jewelry, household goods and "Also Dwelling House". The opinion of the Supreme Court states that the will was typewritten on a legal form and that the three words just quoted were written in longhand.

The will of decedent was admitted to probate and letters testamentary issued to the daughter. On the theory that she was devised the "Dwelling House", which was the only real estate possessed at her death by decedent, the daughter failed to account for such realty. A petition was then filed by her brother to compel the sale of the property and an accounting of the proceeds thereof under the fourth and fifth paragraphs of the will. A decree was entered in favor of the brother. From this action the daughter appealed to the Supreme Court. The decree of the lower court was reversed and the petition of the brother dismissed.

If the view of the majority of this court in the instant case be correct, the Supreme Court, when presented with the appeal in Sarver's Estate, should have referred to the decree of the register of wills admitting the will to probate, in order to ascertain whether he had made any finding respecting the execution of the written notation "Also Dwelling House" on which the daughter based her claim. This would have been required because, if the majority of this court be correct, the lower court was without jurisdiction to consider the effect of the added words unless the register of wills had expressly admitted them to probate. Had there been such defect in jurisdiction, it would have been the duty of the Supreme Court to raise the objection of its own motion, although not asserted by any of the parties.

The Supreme Court, instead of examining the decree of the register of wills, declared:

"No issue is made of the correctness of the probate of the will. Since two years have passed without appeal no successful challenge can now be made: Act of June 7, 1917, P. L. 415, section 16 (*a*). We assume the regular execution of the entire will and the insertion of the changes prior to the execution." (Sarver's Estate, supra, p. 351.)

In this statement it is seen that the court adopted the view that when the time for appeal from probate has expired the due execution of notations appearing on the face of the probated will must also be deemed duly proved.

The Supreme Court then proceeded to construe the effect of the added words, and concluded that they removed the dwelling house from the operation of the general clause. To this extent the notation had the effect of revoking the fourth and fifth paragraphs insofar as the dwelling house was concerned.

While the court in Sarver's Estate did not deem it necessary to examine the decree of probate, it is significant to note the form of that decree. Counsel for

the accountant has set forth the decree in his brief. It simply provides:

"Now, January 18, A. D. 1933, the testimony of the above-named witness being sufficient, I do hereby admit the foregoing will to probate, and order the same to be recorded as such", signed by the register.

Like the decree in the instant case, no reference is made to the existence or nonexistence of additions or notations.

For similar cases in which the effect of cancellations has been considered on distribution, without considering whether such cancellations had been "probated" by the decree of the register of wills, see Tomlinson's Estate, 133 Pa. 245 (1890), and Lindeman's Estate, 141 Pa. Superior Ct. 225 (1940).

In the brief of counsel for the accountant it is stated that in Tomlinson's Estate the order granting letters and the decree of probate were combined, and read as follows:

"Be it remembered, that on the thirty-first day of October, A. D. 1898, the foregoing will of Wells Tomlinson, late of the Borough of Norristown, Montgomery County, Pennsylvania, deceased, was duly proved and approved, and letters testamentary granted unto Abram Wentz and Simeon M. Dutton, the executors in said will named, they having first been duly qualified according to law", signed by the register.

In Lindemen's Estate, counsel for the accountant states that the order granting letters testamentary was in practically the same form as in the instant case, but that, in conformity with the practice of the county in which the will was probated, no separate decree of probate was ever made.

For the reasons discussed above, I dissent from the majority and would dismiss the exceptions. I would also hold that the decree of probate established the validity of the notations, and that they were properly before the auditing judge for construction.