Estate of Bogart, Deceased, Appeal of Bogart, Mellick and Runyan.

Argued March 4, 1929.

Before Trexler, Keller, Linn,
Gawthrop, Cunningham and Baldrige, JJ.

*H. Mont Smith,* and with him *H. G. Teel,* for appellants.—The signature of the testator was at the logical end of the language of the paper, whether farthest removed in space from the beginning of the will or not, and the entire paper should be probated: Stinson's Estate, 228 Pa. 475; Baker's Appeal, 107 Pa. 381; Swire's Estate, 225 Pa. 188; Teed's Estate, 225 Pa. 633; Wikoff's Appeal, 15 Pa. 281; Linnard's Appeal, 93 Pa. 313.

*E. J. Mullen,* and with him *G. W. Moon,* for appellee, cited: Mullen v. McKelvey, 5 Watts 399; Kurtz v. Salor, 20 Pa. 205; Taylor v. Mitchell, 57 Pa. 209; Saunders v. Samarreg Co., 205 Pa. 632; Heise v. Heise, 31 Pa. 246.

Opinion by Linn, J., April 10, 1929:

The question is how much of the following instrument should be admitted to probate as the will of George W. Bogart. The writing is on the first, second and third pages (though testator did not number

them) of a sheet of paper folded once; part is written in ink, part in pencil; to distinguish these parts, what is written in pencil is here printed in italics. On page 1 is the following, occupying the entire page:

Bloomsburg, Pa.,
June 13, 1913.

George W. Bogart. is going to appoint his son Lewis excur*ty* . to settle up his astate after he is dead and gone. He is to divided all his finanicals. to his children equally. If there is any property, to sell it and divide the money equally to the said children,

(at this point it is not clear whether a comma was changed to a period, or a period to a comma; appellants contends that it remains a comma; in view of the other punctuation shown in the copy, we attach no importance to the contention).

At the foot of page 2, otherwise blank, was the following:

George W. Bogart.

Witnesses:
JC Bucher Catawissa Pa.
*George W witenight Madens town Ship*

The words Madens township extend across the foot of page 3, and the record indicates that by Madens, testator meant Madison.

At the top of page 3, appears the following:

*tow lewis Bogart*
*And Cary Mekick*
*And irene girton*
*And Dasy runen*

The register of wills, reading the paper in the order of pages 1, 3 and 2, admitted the entire instrument to probate. From that decision, testator's grandchildren, who were children of testator's daughter, Mrs. Miller, who was living when the will was made, but who died before testator, appealed to the orphans'

court, claiming the share their mother would have taken, pursuant to section 15 of the Wills Act (1917, P. L. 403, 408, formerly section 12, 1833, P. L. 250) under so much of the instrument as was written in ink. The orphans' court sustained their appeal and excluded page 3 as an unsigned codicil, and directed the probate of pages 1 and 2. Three of testator's children appeal from that decision.

Testator died in 1925. The evidence shows that at the date of the paper, 1913, testator's family consisted of a son, Lewis, and four daughters, Carrie Mellick, Irene Girton, Daisy Runyan, and Flora E. Miller. If testator then intended that his children should share his property equally as appears on page 1, it would be divided into fifths. Mrs. Miller died in 1920, leaving surviving three children who survived testator, and who, as has been stated, appealed from the decision of the register. At his death, testator left surviving four of his five children named above. If page 3 is considered part of his will, and is read as preceding his signature on page 2, the estate will be divided in fourths and Mrs. Miller's children will receive nothing. The fact that such inconsistency exists between the intention expressed in ink on page 1 and that expressed in the pencil addition on page 3, is said by appellee to exclude the application of the rule that the order of paging is immaterial in determining whether a will is signed "at the end thereof," if a reading from the beginning through all the parts, concluding with the signature, discloses a coherent and clearly stated intention; compare Stinson's Est., 228 Pa. 475.

Now, having an instrument partly in the writing of Bucher, and partly in that of testator, with the inconsistency between a division of his estate into fifths as stated on page 1, in Bucher's writing, with the division into fourths on page 3, in his own hand, written below the signature on page 2, we come to the

application of the presumption, thus stated in Taylor's Estate, 230 Pa. 346, 351: "When a testamentary writing is found beneath the signature of a testator, the probability is that such writing was not there at the time the will was executed; for reason and general practice assure us that if it had been part of the will, the testator would have signed beneath it and not above it; so, in the absence of evidence, it is proper to presume that the writing was added after the execution of the will."

That brings us, then, to an examination of the evidence produced. Testator's signature was proved by non-subscribing witnesses. Bucher, one of the subscribing witnesses, could not be found in the state; he was last heard of in Ohio, but his testimony was not obtained. Bucher's brother identified his brother's signature as a witness, and also testified that the portion in ink (page 1) was in his brother's writing, Lewis Bogart testified that, in his opinion, Bucher wrote that part of the will (page 1) that is written in ink, and that the parts of the paper (page 3) and the letters rty (after the letters excu, page 1) were written by his father, the testator, with whose writing he was familiar.

Witenight's signature was not proved; on the contrary, it was shown that the only man of that name (and he spelled it Whitenight) in Madison (madens) township was dead (when the evidence was taken) and his daughter and son-in-law testified that they were familiar with his signature and that the name was not in his writing and was misspelled—the letter $h$ being omitted in the first syllable, and that the initial $W$ was not part of his name. A comparison of the writing of the line "George W witenight Madens town Ship" with the pencil writing on page 3 said to be in testator's writing, shows without the least doubt, that the line is the same hand writing. There is no evidence showing when the pencil writing was done,

whether at the time testator signed on page 2 or subsequently, except that it appears after what, by itself, is a complete will. Appellees suggest the theory that it was probably done by testator in 1920 after his daughter, Mrs. Miller, died. Certainly Witenight's name as a witness follows Bucher's and, as we have said, there is no doubt that it was written by the same hand that wrote the names on page 3. Alone, the pencil writing (page 3) means nothing; if read with the disposing parts of page 2, it modifies them by excluding one of his daughters (or her children) from a share in testator's estate; it is an alteration of what without it, is a complete will; such an unattested alteration, under the rule quoted above, is presumed to have been made after the execution of the will, in the absence of evidence showing when it was made: Teed's Est., 225 Pa. 633; Taylor's Est., 230 Pa. 346. See generally Churchill's Est., 260 Pa. 94; Seiter's Est., 265 Pa. 202; Maginn's Est., 278 Pa. 89; S. C. 281 Pa. 514.

In this case, therefore, we must conclude that the pencil writing on page 3 was added after the will had been executed, and not being signed, is not entitled to probate.

We should add that there is no authority for a joint appeal by testator's three children who now survive: McGlinn's Est., 270 Pa. 373; in the circumstances, however, instead of quashing, we have treated the appeal as that of one of the three.

Judgment affirmed, costs to be paid out of the estate.