## Baker's Estate.

Argued May 25, 1938.   Before KEPHART, C. J., SCHAF-FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Herbert B. Cohen,* with him *Clarence M. Lawyer, Jr.,* for appellant.

*John A. Hoober,* with him *James J. Logan* and *John T. Logan,* for appellee.

OPINION BY MR. JUSTICE STERN, June 17, 1938:

Catharine Baker died in 1937. The orphans' court sustained the decision of the register of wills admitting to probate three papers alleged to constitute her last will and testament. One of these, designated in the record "Exhibit D," consisted of a typewritten will on a sheet thirteen inches long by eight and a half inches wide. One paragraph directed payment of debts and funeral expenses, a second devised the residuary estate to decedent's sister, Sarah Baker, and a third appointed her as executrix. The will was dated October 31, 1923, and was signed by decedent. The words of the paragraph devising the residuary estate to the sister (who died in 1934) were crossed out by pencil lines, and a paper, marked in the record "Exhibit B," six inches long and four and a half inches wide, was pinned over this paragraph by means of an ordinary, straight metal pin. "Exhibit B" was in the handwriting of decedent; it was undated and unsigned, and it bequeathed one-fifth of the estate in trust for decedent's brother, William Baker, and the balance of the estate to her nephews and nieces, to be equally divided, share and share alike. In the third paragraph of the typewritten will, the appointment of decedent's sister as executrix was crossed out by pencil lines, and over this paragraph was fastened, also by an ordinary pin, a paper, marked in the record "Exhibit C," five and a quarter inches long and two and three-quarters inches wide, almost completely covered by the larger sheet "Exhibit B." "Exhibit C" was in the handwriting of the decedent, and contained the appointment of John A. Goudy as executor. It was signed by decedent, and bore the date September 26, 1936.

In view of the fact that the only two significant provisions of the original will were revoked by the pencilled cancellations *(Tomlinson's Estate,* 133 Pa. 245), "Ex-

hibit D" is of no practical importance and its probate is not contested. "Exhibit C" is also uncontested; having been signed by decedent, it constitutes a valid codicil. The controversy is in regard to "Exhibit B," which disposes of the residuary estate. Appellant is one of decedent's nieces. As the only child of a deceased brother of decedent she would receive a larger portion of the estate under a per stirpital distribution in intestacy than under a per capita distribution in accordance with the bequest in "Exhibit B," there being in all sixteen nephews and nieces, the children of four predeceased brothers and sisters of decedent.

Not only is there a presumption, in the absence of evidence to the contrary, that an alteration or interlineation was made after the signature of the will (*Teed's Estate*, 225 Pa. 633, 637; *Taylor's Estate*, 230 Pa. 346, 350, 351; *Estate of Bogart, Deceased*, 96 Pa. Superior Ct. 26, 31), but in the present case it is obvious that "Exhibit B" was attached to the typewritten will at some time subsequent to the latter's execution. Therefore, being unsigned, it cannot be probated as a codicil. To overcome this difficulty, the attempt is made to link it to "Exhibit C," so as to bring it under the protection of the signature on that paper. Unfortunately, "Exhibits B" and "C" are lacking in the requirements upon which the permissibility of such a joinder is conditioned. Although they are each pinned to the typewritten will, they are physically separated from one another; neither are they connected or correlated by their internal sense. As was said in *Seiter's Estate*, 265 Pa. 202, 207: "There is nothing in any one of the papers, that refers to a matter or thing in the others; nor is there anything by reference, history or recital that would have a tendency to connect the papers. . . . Each paper standing alone contains an independent, completed thought. . . . There must be something in all the papers in addition to such physical connection to make a last will. It must spring from the papers

36

themselves and each be shown, either by their relation, recital, reference, natural sequence or continuity of sense, in a word, internal sense, to be part and parcel of a whole. . . . The reference must be complete in the papers themselves." See also *Maginn's Estate,* 278 Pa. 89, 281 Pa. 514; *Fisher's Estate,* 283 Pa. 282; *Bryen's Estate,* 328 Pa. 122.

To permit the probate of such a paper as "Exhibit B" would be to legalize a practice by which testators, instead of formally executing codicils in the manner prescribed by the statute, could pin unsigned scraps of paper to their wills, and later remove and replace them at pleasure as their testamentary plans changed from time to time. It would also enable evilly-disposed persons to pin to the will of a testator fragmentary slips which he may have discarded or prepared only tentatively, or to remove similar pieces which he had pinned thereto. Thus the way would be opened to unbounded possibilities of fraud.

The decree of the court below is reversed, and the record is remitted for the entry of a decree limiting probate to "Exhibits C" and "D." Costs to be paid out of the estate.