## Rosenthal's Estate.

Argued May 7 and May 8, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

Marshall A. *Coyne,* with him *Harold C. Cohen* and *David J. Smyth,* for appellant.

*Leslie M. Swope,* with him *Drinker, Biddle & Reath,* for appellee.

*W. LeRoy McKinley,* for appellees.

OPINION BY MR. JUSTICE LINN, September 30, 1940:

The question is whether there was abuse of discretion in refusing an issue devisavit vel non. Testatrix, a widow, died August 20, 1937, without surviving children, but leaving three minor grandchildren, issue of a deceased daughter. This appeal is prosecuted by their guardian, who complains that the learned court below refused her application for a jury trial[1] to determine whether the first page of a two-page codicil, dated June 9, 1937, executed by testatrix only on the second page, was in fact part of the codicil, or whether it had fraudulently been substituted for another page that was part

---

[1] Under section 21(b) of the Act of June 7, 1917, P. L. 363, 20 PS section 2582.

of the codicil when it was executed. This codicil, with the will, dated February 11, 1937, and another codicil dated May 9, 1937, was admitted to probate. No question is raised about the probate of the will and the codicil of May 9th. The controlling rule of law is not disputed;[2] it was recently applied in *Noble's Estate*, 338 Pa. 490, with a reference to a number of the cases. The appellant also makes the important concession that testatrix had testamentary capacity and that no undue influence was exerted. The charge is fraudulent substitution of the first page of the codicil.

In the first paragraph of her will, testatrix directed payment of her debts; in the second, disposition of jewelry, clothing, personal and household effects, etc., "in accordance with a memorandum which I shall leave for the guidance of my executors. . . ." Such a memorandum was made by her and was admitted to probate as the codicil of May 9, 1937. In the third paragraph of her will, she made a number of money bequests, one of

---

[2] "It is the established law of Pennsylvania that, in cases of the character of the one now before us, the judge is vested with power to decide whether or not he shall submit oral evidence to the jury, even though it be conflicting. It is his right and duty, after weighing the whole evidence impartially, to refuse to present it to the jury unless he either feels the ends of justice call for a verdict against the will, or is so uncertain on this point that he could conscionably sustain a finding either way on one or more of the controlling issues involved. If, after so weighing the whole body of the evidence, the trial judge feels sure that his professional and official conscience would not permit him to sustain a verdict against the validity of the will, either because the contestants' proofs lack probative force or are legally inadequate, or because those that are reasonably worthy of credence raise no material conflict on any governing point, or the 'prima facie case' which they present has been 'so overcome by opposing proof as to leave no substantial dispute' (*Sharpless's Est.*, 134 Pa. 250, 259; *Fleming's Est.*, 265 Pa. 399, 406), it is his bounden duty to instruct the jury peremptorily against the contestants: *Phillips's Est.*, 244 Pa. 35; *Fleming's Est.*, 265 Pa. 399, 406." *Tetlow's Estate*, 269 Pa. 486, 494, 112 A. 758.

them, $5,000, to Frank D. Behring, an appellee. In the fourth paragraph, subsequently changed by the challenged codicil, she gave the residue of her estate to "Sydney Dreifus and Frank D. Behring, their heirs and assigns, and Girard Trust Company . . ." in trust (shortly stated) to accumulate the income for her three named grandchildren until majority, then to pay them the income; to pay them one-half the corpus at twenty-five and the other half at thirty-five. She gave her grandchildren powers of appointment and provided for distribution in the event of death without issue or failure to appoint. The fifth paragraph dealt with other trust powers; the sixth authorized the executors or trustees to apply net income for the benefit of the minors in specified circumstances; the seventh contained spendthrift trust provisions; the eighth provided for the payment of taxes; in the ninth and last paragraph she appointed as executors the same parties named trustees in the fourth paragraph.

The challenged codicil consists of two sheets of paper, not firmly fastened together; it is typewritten, except for the date "9th" inserted by a pen in a blank space which had been left for the purpose. It is conceded that testator signed it in the presence of John E. Fitzpatrick, the subscribing witness; the sufficiency of the proof of execution is also admitted.

The first sheet is as follows :

"A codicile to my Last Will dated February 11, 1937.

"On page 2 of my Last Will, I wish it to read

"FOURTH: All the rest, residue and remainder of my estate of whatsoever kind, whether real, personal or mixed and wheresoever situated and whether now owned or hereafter acquired by me, I give, devise, bequeath, limit and appoint unto Sydney Dreifus and Frank D. Behring, their heirs and assigns, and the First National Bank, 2nd Street and Girard Ave. Office, of the City of Philadelphia, State of Pennsylvania, its successors

and assigns, IN TRUST, NEVERTHELESS, for the following uses and purposes, that is to say:

"IN TRUST, to hold, manage, rent, invest, reinvest and keep invested the corpus or principal thereof in such investments as trustees in their wise discretion shall deem proper, and to demand, collect and receive the rents, dividends, interest and income therefrom and, after the deduction of all necessary and proper charges and expenses, to pay over one-half the income therefrom, starting one year from the date of my death, quarterly, unto Frank D. Behring until my grandchildren, Robert A. Schless, Jr., Howard H. Schless and Guy L. Schless shall respectively attain the full age of twenty-one years; with power in my said grandchildren, in their sole and absolute discretion, to withdraw their respective distributive shares of the corpus or principal of my said residuary estate from which they may be at the time entitled to the income, free and clear of any and all trusts hereunder, one-half part thereof after they shall have respectively attained the age of twenty-five years, and the balance thereof after they shall have respectively attained the full age of thirty-five years."

The second sheet is as follows:

"Continuation of codicile of my Last Will dated February 11, 1937.

"Also, that on page 4 of my Last Will dated February 11, 1937, under paragraph

"NINTH: I hereby nominate, constitute and appoint said Sydney Dreifus, Frank D. Behring and the First National Bank to be the executors of this my Last Will and Testament, and in the event that either the said Sydney Dreifus or Frank D. Behring shall be deceased or for any reason shall be unable or unwilling to act as coexecutor of and/or cotrustee under this my Will, I nominate, constitute and appoint Harry Dreifus to be coexecutor of and cotrustee under this my Will in his place and stead; and I direct that no bond shall be required of them or any of them, in the State of Pennsyl-

vania or elsewhere, conditioned upon the faithful performance of their duties as such executors of and/or as trustees under this my Will.

"IN WITNESS WHEREOF I have hereunto set my hand and seal this 9th day of June A. D. One Thousand Nine Hundred and Thirty-seven.

"[signed] *Birdie M. Rosenthal* L. S.

"Witnessed

"John E. Fitzpatrick [signed]"

In her amended petition, in the court below, appellant averred: "Your petitioner believes and expects to be able to prove that from the suspicious circumstances surrounding said codicil that the unsigned sheet was not present nor in the contemplation of the decedent at the time of signing and witnessing of the single sheet constituting her codicil; that the sole purpose of the decedent in her codicil of June 9th, 1937, was merely to change the executors and trustees under her Will; that she never contemplated changing those beneficiaries interested under the residuary clause of her Will of February 11, 1937, and that Frank Behring prepared said unsigned sheet and fraudulently made it part of the Will of the decedent as an apparent codicil thereto."[3]

Behring, in addition to receiving the legacy of $5,000, had, as was stated above, been named in the will as one of the executors and also one of the trustees. By the codicil of June 9, 1937, his benefits were increased; he

---

[3] She prayed that an issue be "directed to try by a jury the following questions of fact:

"(a) Whether the unsigned paper writing probated as a codicil to the will of February 11th, 1937 was executed in accordance with Section 2 of the Wills Act of Pennsylvania requiring wills and codicils thereto to be signed at the end thereof.

"(b) Whether the decedent knew or contemplated the existence of the unsigned sheet or intended it to be a codicil to her will.

"(c) Whether the unsigned paper writing probated as a codicil to the will of February 11, 1937 was fraudulently prepared by Frank Behring and by him fraudulently and colorably made a part of the will of February 11, 1937 as an apparent codicil thereto."

was given, during the grandchildren's minorities, what, according to appellee's brief, may amount to one-half the net income for a period of five years, one-third for two additional years and one-sixth for the last five years.[4] His relations with testatrix and her husband were considered in the opinion filed in *Rosenthal's Estate*, 335 Pa. 49, 6 A. 2d 585 (1939), a proceeding that was referred to in the hearing of this case.

Before dealing with the evidence relied on for the contention that Behring fraudulently substituted the first page, it is necessary to consider the legal question whether that page, which is not signed by the testatrix, and the second, which is signed, constituted a single instrument; whether they are (in the accepted phrase) sufficiently "connected by their internal sense"; if they do not constitute a single instrument there was no authority for the probate. This subject is adequately dealt with in the opinion of the learned hearing judge and also in the opinion filed by the court in banc in disposing of appellant's exceptions; we shall therefore only refer briefly to the controlling evidence. The first page begins by the heading "A codicile to my Last Will dated February 11, 1937" and, in the next line, refers to page 2 of the will and its fourth paragraph in which testatrix says she desires to have read as she then states it on the rest of that page. In the fourth paragraph, as was stated above, she had disposed of the residue of her estate and had appointed Sydney Dreifus, Frank D. Behring and the Girard Trust Company, trustees. One of her purposes in making the codicil was to eliminate

---

[4] We are not advised of the exact amount of the estate but, on this subject, the opinion of the court in banc states: "This evidence, coupled with the extent of the gift (one-half of the income until testatrix's grandchildren attain their majority) in comparison with the size of the estate and considering the other natural objects of the testatrix's bounty, indicates that while proponent benefits considerably under this instrument, nevertheless, it is not to any degree unconscionable or such as to evidence per se an overreaching on his part."

the Girard Trust Company as one of the trustees and to substitute "the First National Bank, 2nd Street and Girard Ave. Office, of the City of Philadelphia, . . ." In the fourth paragraph of the will, she had provided for the accumulation of the income during the minorities of the grandchildren; this provision was now changed on the first page of this codicil by directing the trustees "to pay over one-half the income therefrom, starting one year from the date of my death, quarterly, unto Frank D. Behring" until the grandchildren become of age. The first thing at the top of the second page is "Continuation of codicile of my Last Will dated February 11, 1937."[5] The next line begins: "Also, that on page 4 of my Last Will. . . ." Both the word "Continuation" and the word "Also" indicate that the second page was not in itself the complete instrument but that something had preceded it and was now in process of completion. The second page then goes on to refer to the 9th paragraph of her will and contains what undoubtedly refers to and connects with what was stated on the first page. This provision is, I nominate, etc., "said Sydney Dreifus, Frank D. Behring and the First National Bank to be the executors of this my Last Will and Testament. . . ." This bank was not referred to in the will and appeared for the first time in the first sheet of the codicil with relation to the 4th paragraph of the will appointing trustees. In the 9th paragraph of her will testatrix had named the Girard Trust Company as one of the executors. The words on the second sheet "said Sydney Dreifus, Frank D. Behring and the First National Bank," therefore, directly refer to the words on the first sheet "the First National Bank, 2nd Street and Girard Ave. Office, of the City of Philadelphia, . . ." On the first page she made a change in the trustees and on the second page a change in the executors, and, in addition, joined the executors and trus-

---

[5] This line, Behring testified, was written by him without the dictation of testatrix.

tees in the provision that no bond shall be required of them. We must therefore agree with the learned court below in the legal conclusion that the papers are so connected in their internal sense as to constitute a single instrument and therefore entitled to probate,[6] unless appellant shall have made good her averment of fraudulent substitution of the first page by Frank D. Behring. We then come to that subject, for it is only on that branch of the case that the demand for a jury trial is for consideration.

The averment is that Behring was guilty of forgery; that he fraudulently substituted the first page of the codicil for something else that testatrix had first caused to be prepared and which she desired to have precede what is on the second page. If the issue were granted, appellant would have the burden of proving the forgery to the satisfaction of a jury, but before the issue can be granted, the appellant must first satisfy the court below that "the ends of justice call for a verdict against the will, or [that the court] is so uncertain on this point that [it] could conscionably sustain a finding either way. . . ." *Tetlow's Estate,* 269 Pa. 486, 494, 112 A. 758; see also *Brehony v. Brehony,* 289 Pa. 267, 270, 137 A. 260. As the presumption of innocence *(Wikoff's Appeal,* 15 Pa. 281, 290) was with the proponent, it was necessary that appellant overcome it. Judge STEARNE, the hearing judge, put the matter with characteristic clearness: "Doubtless there was ample opportunity for perpetration of fraud by Frank D. Behring, and there may be ground for considerable conjecture and suspicion, but as was said by HENDERSON, J., in *Wanamaker's Estate,* 8 D. & C. 569, p. 576: '. . . opportunity is not evidence, and conjecture and suspicion do not take the place of testimony.' " The close relation in which Behring stood to testatrix is described

---

[6] See *Maginn's Estate,* 278 Pa. 89, 93, 122 A. 264; *Maginn's Estate,* 281 Pa. 514, 517, 127 A. 79; *Baker's Estate,* 331 Pa. 33, 35, 200 A. 65, and cases cited in those opinions.

in the opinion in *Rosenthal's Estate*, 335 Pa. 49, 6 A. 2d 585, supra.[7] Behring, who was called by the appellant, described the circumstances in which he typed the codicil. He testified that testatrix had her will and read from it parts of the fourth and ninth paragraphs and dictated the modifications as she desired them and as they now appear in the codicil and that he typed them as she read and dictated to him; that he made an original and one carbon copy, which, after she read them, were left with her.[8] Mr. Fitzpatrick, who witnessed her signature was an employee of the Rosenthal Company and testified that he was invited to her house for dinner, and afterward, at her request, saw her execute the codicil and witnessed her signature; that while

---

[7] On that subject the court in banc, in an opinion written by BOLGER, J., said: "On the other hand, there is no allegation that testatrix was of weakened mind. It is clear also that proponent was a favorite of testatrix, and while not of her blood, yet a natural object of her solicitude. He had been in close and constant association with testatrix's husband and herself in the former's lifetime, and after his death, with testatrix herself. The record contains nothing in our opinion to substantiate anything but that the utmost propriety and regularity existed in this relationship. We have the testimony of at least three credible disinterested witnesses that testatrix, at times suspicious to the execution of the questioned codicil, expressed her intention to further provide for proponent by her will."

[8] "Q. What did you do with it? A. When we were finished I gave Mrs. Rosenthal the two original copies and I took the carbon copy and we stayed there and read them over. Mrs. Rosenthal read it out loud and we talked about it and when finished I put the two papers together. They were put in the top bureau drawer. By the Court: Q. What do you mean by putting the two papers together? A. The four papers were put together, the two originals on top and the two carbons underneath. There was a paper clip stuck in the upper side about here and she took the four papers and put them in the top bureau drawer. Q. When you talk about a paper clip you mean a metal arrangement something like that? A. Just like that (indicating). Q. That clips over without fastening permanently? A. No, just with a paper clip. Q. What I would call a non-mutilating paper clip? A. Yes."

498

there was more than one sheet he did not see enough of the instrument to describe it in greater detail. Witnesses testified to declarations that she wished to change her will and make further provision for Behring.[9] Appellant also regards the circumstances in which the codicil was found as suspicious; it was not found immediately after death but was located by Behring on September 12th in a letter file in decedent's house. The will had been found in her safe deposit box in the Girard Trust Company. The carbon copy of the codicil was found in a safe in Mrs. Rosenthal's bedroom; the combination of this safe was obtained from a memorandum in her writing found in her safe deposit box. The safe was opened by an employee of the Trust Company. Behring testified that he did not know the combination and had never had access to the safe. The appellant suggests that this evidence should not be believed; but, there is no denial of it and it came from a witness called by her; moreover, if the court elected not to believe his testimony, the rejection of it would still not prove that he opened the safe and put the carbon copy of the codicil in. Mere opportunity to commit a fraud, is, of itself, not sufficient to prove that Behring committed a fraud. The proponent called witnesses, experts in the operation of typewriters, who pointed out physical appearances in the papers which amounted to a demonstration that the face copies of the codicil and the carbon copies taken out of the safe were written at the same time on the same machine by the same operator.[10]

---

[9] One of these witnesses was John J. Mitchell, Jr., a member of the bar; another was John E. MacGregor, trust officer of the First National Bank.

[10] On this subject the record contains the following: "MR. COYNE: May I interrupt and say that I do not suppose there is any question that the carbon copy of the first sheet, sheet No. 1 carbon is a correct and exact carbon of the sheet No. 1, and sheet No. 2 carbon is an exact carbon of sheet No. 2. Let us admit that. THE COURT: You admit that? MR. COYNE: Yes."

The opinion of the learned court below, sitting in banc, concluded as follows: "As the hearing judge well said, the 'evidence would not support a finding by a jury against the codicil.'" We cannot find that the court abused its discretion in reaching that conclusion and must therefore affirm the order appealed from; costs of the appeal to be borne by the estate.