## Doran Estate

Before Sinkler, P. J., Klein, Bolger and Hunter, JJ.

*David B. Fitzgerald,* for appellant.

*Adams, Childs, McKaig & Lukens,* and *Edgar S. Mc-Kaig,* contra.

HUNTER, J., January 26, 1951.—Decedent died August 10, 1947, leaving a will dated July 21, 1946, which was admitted to probate May 5, 1948, after caveat and protracted contest before the register on grounds of testamentary incapacity and undue influence.

Daisy D. Williams, a niece, who had been the contestant of the will dated July 21, 1946, has appealed, and now attempts to prove that a later writing dated July 22, 1946, is the last will and testament of decedent.

The value of the estate as stated in the petition for letters is $20,000.

The probated will of July 21, 1946, is a formal document drawn by Albert E. Holl, of the Delaware County bar. It gives 14 legacies of $100 each to relatives and friends, among whom is appellant; $1,000 to Hester Morton, a friend, and the residue of the estate to decedent's brother, Frederick C. Doran, of Toronto, Canada.

The alleged will dated July 22, 1946, which is one day later than the probated will, is a small card issued by the Western Saving Fund Society as a receipt for the delivery to it for safekeeping of decedent's savings account book no. W 90. At the upper part of the card is printed the name and address of the saving fund, in the middle "Book No. . . . . . . . ." with the number "W 89" inserted in ink, and below there is printed "Received for safe keeping". There is squeezed into the two spaces among the three lines of printing, without effacing any printed word, the following words in typewriting:

"July 22, 1946
"At my death
I will all my possessions to Hester
Morton and Daisy Williams equally"

Then follows the last printed line "Received for safe keeping", and below that the name of decedent written in lead pencil and her address.

It is admitted that the name and address of decedent is in her handwriting.

Appellant testifies that she found the card on May 5, 1948, in her home. In cleaning a bedroom closet, she had put a "Wanamaker's paper bag" containing three family photographs on a chair, and then found the card on the floor. She "assumed" it came from the bag. The photographs had been at the home of dece-

dent, and came into the possession of appellant on the day of the funeral. Appellant brought them to her home, put them on top of the piano where they were for several months, and then in the bedroom closet for several more months.

Decedent habitually permitted her deposit book to remain at the saving fund, and retained in her possession a receipt card. On one occasion she reported to the bank that she had lost or mislaid her card, and another was issued to her.

Proponent cannot make out a prima facie case for this extraordinary document by proof merely that it bears the signature of decedent. If a will is normal in every respect and is properly prepared and executed, there is a presumption of regularity: Rosenthal's Estate, 339 Pa. 488. This writing on its face excites suspicion, and the burden is on proponent to prove its genuineness.

As first prepared by the saving fund and given to decedent, it was a receipt for a bank book. Now there has been injected among the printed words the language of a will which is entirely foreign to the original purpose of the card. We cannot imagine that this was the only writing paper available to decedent, and the forced insertion of words into the body of the receipt justifies the suspicion that it was a fraudulent scheme to make use of the signature of the decedent which she had previously put there for the identification of the card.

The metamorphosis of the card to a will is unexplained. There were no witnesses to its typing or execution. No one ever saw it as a will until it suddenly appeared on appellant's bedroom floor. Decedent did not own a typewriter: she was 79 years of age, and was never known to typewrite. There was a typewriter in the home of appellant. In the opinion of an expert witness, the typewriting was done with that typewriter.

In the opinion of another expert, called by appellant, it was not. It is not necessary to find which is correct.

Appellant's story of the finding of the card is fantastic. It was found May 5, 1948, immediately after appellant lost her contest of the probated will of July 21, 1946. It was found in the home of appellant, not that of decedent.

The alleged will is dated but one day after the probated will. There is no explanation why decedent should radically change her mind over night.

The alleged will of July 22, 1946, is palpably a forgery, and there is no substantial dispute of fact which would entitle the proponent to an issue.

As was said in Fleming's Estate, 265 Pa. 399 (406) :

"In a will contest the judge sits as a chancellor, . . . and must consider all the evidence; and the question is not whether a part of the evidence, standing alone, would support a certain verdict, but whether it would considered as a whole: . . . The right to an issue under the statute depends upon whether there is a substantial dispute upon a material matter of fact, and, unless there is, the *proponent* is no more entitled to an issue on the question of *forgery* than is the contestant on a question of testamentary capacity." (Italics supplied.)

In Stewart Will, 354 Pa. 288, Mr. Justice Jones quotes the following extract from Caughey v. Bridenbaugh, 208 Pa. 414, 415:

" 'In every case tried before a jury in which the trial judge sits as a chancellor, the evidence is addressed to him quite as much as to the jury—it must as a whole be judged by him independently of the jury —must satisfy his (legal) conscience as well as the jury—and cannot be rightfully submitted to the jury as a basis of any finding which he would not approve; in a word, he cannot permit the jury to do what he as a chancellor (after weighing the evidence in the light

of the established law upon the subject) would not do."

The hearing judge here definitely felt that the ends of justice called for a verdict against this alleged will, and that if a verdict were rendered by a jury in favor of it, predicated upon the present record, he would set it aside. We concur in those findings.

What is a substantial dispute depends upon the facts of every case. However, it must be clearly understood that "a party is not entitled to have an issue submitted to a jury merely because he produces enough evidence to make out technically a prima facie case": DeLaurentiis' Estate, 323 Pa. 70, 77.

This case falls within the decisions of Fleming's Estate, 265 Pa. 399; Kane's Estate, 312 Pa. 531, and Culbertson's Estate, 301 Pa. 438, where the court denounced a will as a forgery and refused an issue.

The present case is not controlled by Lare Will, 352 Pa. 323, in which the Supreme Court directed the awarding of an issue devisavit vel non. In the Lare case dispositive language was typed above decedent's signature appearing on a blank check. In this case the typing was over a signature on a receipt for a pass book issued by a savings fund society. However, the similarity between the two cases ends at this point.

In the Lare will, decedent died leaving a husband as the beneficiary under the disputed will. Since she was childless, he was the natural object of her bounty. She died leaving no other will and the questioned check-will was found in her home within a week of her death. Furthermore, she was an expert typist, owned a typewriter and could have readily typed the disputed writing.

It is interesting to note that this second will was not found by appellant until May 5, 1948, which was about two weeks after the register of wills dismissed her contest of the first will.

It is also significant to note that Hester Morton, decedent's close friend, who would share equally in decedent's estate with appellant under the disputed document, and who only receives a legacy of $1,000 under the first will, has repudiated the second document in her answer and preliminary objections filed in the present proceedings, and voluntarily appeared as a witness for contestants.

In the present case, proponent of the alleged second will, who is a niece of decedent, challenged the validity of the earlier will and vigorously prosecuted her claim that decedent lacked testamentary capacity on July 21, 1946, the date upon which that will was executed. She now blandly repudiates her former position and offers a will dated July 22, 1946, as the last testament of a sane and competent person. This alone would characterize proponent as a person unworthy of belief or credence.

We find no merit in the contention of appellant that the hearing judge, after proof of decedent's signature, should have remitted the record for contest in the first instance before the register. The presence of the signature on the instrument was the only aspect of the case favorable to appellant, and it was not by any means conclusive. In fact, its significance disappears when weighed in the perspective of all of the attending circumstances. Therefore, the matter was within the discretion of the hearing judge, and it was right and proper that he should first satisfy himself whether this writing, so irregular on its face, could possibly be the will of decedent. See opinion of Judge Ladner (now Justice Ladner) in disposing of preliminary objections filed in these proceedings and reported in Doran Estate, 65 D. & C. 227.

In view of our conclusions as to the invalidity of the disputed document it is not necessary to pass on the

question discussed by the hearing judge as to whether it was signed at the end thereof.

The exceptions are dismissed, and the decree of the hearing judge is confirmed absolutely.