**Supplee Estate**

*William S. Ayres,* of *Duane, Morris & Heckscher,* for accountant.

*Robert Friedman,* of *Dechert, Price & Rhoads,* for executor.

*William T. Dyer,* of *Morgan, Lewis & Bockius,* and *John T. Kehner,* for remainderman.

SILVERSTEIN, J., April 18, 1972.—William C. Supplee died on March 13, 1916, leaving a will dated October 24, 1914, with interlineations, marginal notes and crossings-out. At the audit of the executor's account on February 7, 1921, by adjudication of Lamorelle, P. J., dated February 16, 1921, the residuary estate was awarded to Philadelphia Trust Company, trustee under the will, and income awarded equally to Helen F. Supplee, surviving spouse, and Margaret H. Supplee (now Treat), daughter. No exceptions were taken to Judge Lamorelle's adjudication.

An accounting for the fund so awarded to the trustee was audited on April 11, 1921, and by adjudication of Thompson, J., dated April 13, 1921, was awarded back to the trustee, one-half thereof in trust for Margaret H. Supplee and one-half thereof in trust for Helen F. Supplee. Thereafter, a schedule of distribution reflecting these awards was approved by Thompson, J., on June 24, 1921. No exceptions were taken to Judge Thompson's adjudication.

This accounting of the fund awarded by the above adjudication is occasioned by reason of the death of Margaret H. Supplee Treat, surviving income bene-

ficiary, on January 26, 1968, the said Margaret H. Supplee Treat having been the sole income beneficiary from each of the above trusts since the death of Helen F. Supplee on June 15, 1921.

The accountant proposes to distribute the principal of this trust, pursuant to the exercise of the power of appointment contained in the will of William C. Supplee, deceased, said power having been exercised by Helen F. Supplee in her will dated June 2, 1921.

Girard Trust Bank, Coexecutor of the Estate of Helen F. Supplee, deceased, opposes the same, in view of the marginal and interlineated notes and the horizontal lines extending through various clauses of the typewritten will of William C. Supplee, deceased. They argue that the horizontal lines striking out portions of the will are effective to revoke those portions, and either (1) the handwritten material in the margin is ineffective, or (2) the handwritten material in the margin is effective. In either event, such a construction would render the power of appointment with respect to the principal share of the trust for Helen F. Supplee void and result in an intestacy. Girard asks that the principal be awarded back to the intestate heirs of William C. Supplee, more particularly to the estate of Helen F. Supplee, for administration under her will.

Copies of the will of William C. Supplee and Helen F. Supplee are annexed.

To accept this argument and to reconcile it with the prior adjudictions of Lamorelle, P. J., and Thompson, J., would necessitate a specific finding that such notations were placed thereon prior to the signing of the will. The record is bare of any such evidence. In fact, the evidence is clearly all to the contrary, the will having been prepared by an outstanding member of the bar of the Orphans' Court and testator's signature

witnessed by both a member of the scrivener's firm and by an experienced trust officer. Such would lead to the inescapable conclusion that the marginal notations were affixed after the execution. This is strengthened by the fact that the will was executed on October 24, 1914, and the death of testator did not occur until March 13, 1916. Consequently, there appeared to be no need for haste, requiring the will to be signed without regard to form and without time to make proper typographical corrections.

The law is clear that interlineations and marginal notes are of no effect if they are not properly executed: Wright Estate, 380 Pa. 106 (1955); Baker's Estate, 331 Pa. 33 (1938); Ober Will, 16 Fiduc. Rep. 160 (1966).

In the instant case, the marginal notations were unexecuted. The courts have applied a presumption that marginal and interlineated notes in testator's handwriting to a typewritten will were affixed after its execution. ". . . there is a presumption, in the absence of evidence to the contrary, that an alteration or interlineation was made after the signature of the will. . . .": Baker's Estate, supra, page 35. See also, Edelman Estate, 84 D. & C. 16 (1953); Guth Estate, 19 Lehigh L. J. 351 (1941).

Consequently, the marginal and interlineated notes are ineffective as a testamentary writing.

The argument is advanced that the horizontal lines striking out portions of the will effectively revoked those portions. In essence, this would void the powers of appointment given to Helen F. Supplee and Margaret H. Supplee Treat, and result in an intestacy with respect to the principal of the trusts for each.

However, the logical conclusion to this argument would render the trust funded for Margaret H. Supplee Treat invalid and an intestacy of that share, as

of the date of death of William C. Supplee. The applicable portion of the will, omitting the portions "revoked" by crossings-out, would then read: "Sixth: All the rest, residue and remainder of my estate real, personal and mixed, wheresoever situated and howsoever held, I give, devise and bequeath to my trustee hereinafter named, and its successor, to invest . . . In Trust to pay the income of a moiety or one-half share thereof to my wife, Helen F. Supplee, for and during her natural life and upon her death to pay the said income of said moiety or one-half share to my daughter, Margaret H. Supplee for and during her natural life."

This position would be inconsistent with the prior adjudications and the position taken by Helen F. Supplee at the death of her husband in 1916 and thereafter in 1921.

The only consistent position, in view of the above, is to give no effect to the marginal and interlineated notes, for the reasons previously discussed and to treat as ineffectual the horizontal lines striking out portions of the will as a revocation thereof.

This is supported by, and is consistent with, the theory that the prior adjudications funding the two trusts established the law of the case.

In addition, this can also be independently supported by the doctrine of dependent relative revocation. While it is conceded that this doctrine is not favored in Pennsylvania, yet it is effective in this State: Melville's Estate, 245 Pa. 318 (1914); Braun Estate, 358 Pa. 271 (1948); Rife Estate, 4 Fiduc. Rep. 474 (1954).

Moreover, in Braun's Estate, supra, the Supreme Court cites the 1930 edition of Jarman on Wills with approval as to the following statement:

"Where the act of destruction is connected with the making of another will, (marginal notes in the instant

case) so as fairly to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted, such will be the legal effect of the transaction; and, therefore, if the will intended to be substituted is inoperative from defect of attestation, or any other cause, the revocation fails also, and the original will remains in force . . .": Vol. 1, p. 135.

The application of this doctrine effectuates the clear intent of testator. In paragraph "Tenth" of his will, he states that it is his sincere endeavor to divide his estate between his wife and daughter in equal shares. Likewise, in the marginal note he expresses the same desire: "First I desire the interests of my wife . . . and my daughter . . . to be taken care of above every other thing."

Since the marginal notes are ineffective, for lack of execution, to treat the crossings-out as an effective revocation would frustrate testator's clear specific intent.

Accordingly, the awards hereinafter will be made in accordance with the request of the accountant.

It appears that all parties in interest have received notice of this audit, including the Commonwealth of Pennsylvania, as parens patriae, and its charitable gift clearance certificate is annexed.

There was no objection to the account which shows a balance of principal, personalty, of $82,300.23 which, composed as indicated in the account, is awarded as follows: one-half to The Rector, Church Wardens and Vestrymen of Holy Trinity Episcopal Church, to be used for parish work; and the remaining one-half to Lankenau Hospital, for the establishment of free beds.

The account shows a balance of income of $20,522.88 which, together with all additional income or interest on deposits, is awarded as follows: income to Janu-

ary 26, 1968, to the Fidelity Bank and William Treat DeWitt, Executors of the Estate of Margaret H. Supplee Treat, and the balance thereof in the same proportions as the awards of principal above.

The above awards are subject to any distributions heretofore properly made.

Leave is granted to the accountant to make all necessary transfers and assignments.

A schedule of distribution, duly certified by counsel to be correct and in conformity with this adjudication, approved by all parties in interest, shall, within 90 days after the absolute confirmation of this account, be submitted to the auditing judge. The schedule, when approved and annexed hereto, will form part hereof.

And now, April 18, 1972, the account is confirmed nisi.