246

Meyer Will.

Argued January 5, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edmund Pawelec,* for appellants.

*Donald O. Hovey,* with him *Frank O. Schilpp, Walter C. Wright, Jr., Charles Morris Hamilton, W. Albert Sanders,* and *Rambo and Mair,* for appellees.

OPINION PER CURIAM, August 6, 1968:
Decree affirmed. Appellants to pay costs.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

The sole issue presented in this appeal is whether a holographic writing which is internally consistent and coherent is sufficient to satisfy §2 of the Wills Act of 1947, P. L. 89, 20 P.S. §180.2. Appellants contend that this three page document the last page of which contains an inventory of decedent's assets is not sufficient because this last page, the page containing decedent's signature, lacks any dispositive provisions. Section 2, however, requires only that the purported will be signed "at the end thereof." To accept appellants' contention this Court would be forced to add to §2 a requirement that the will be signed at the end of the dispositive provisions.

I believe that the unanimous opinion of the Orphans' Court of Philadelphia County adequately disposed of this contention. *Meyer Estate,* 42 Pa. D. & C. 2d 295, 304, 17 Fiduc. Reptr. 454, 464-65 (O.C. Phila. Cty. 1967): "The different pages of a will, if not physically united, must be connected by their internal sense, by coherence or adaptation of parts, and as added by Justice (later Chief Justice) STERN, in his concurring opinion in Covington Estate, supra [348 Pa. 1, 20-21]: 'The separate pages of the will are "connected by their internal sense and by coherence or adaptation of parts" within the meaning of the rule if they do not contain any mutual inconsistencies or con-

tradictions, or any repetitions, but, when read as a whole, constitute a harmonious scheme of testamentary disposition all the parts of which fit together without incompatibility or "incoherence".'

"We disagree with and dismiss the argument of the exceptants that because the disputed page does not contain any dispositive or administrative provisions and does not even contain any inchoate testamentary expressions it cannot be admitted to probate. We would be required, if we followed this argument, to isolate the disputed page from the other writings which accompanied it. While it is completely possible or probable that if the disputed page were the only one offered for probate, it might well have been rejected, the disputed page must under the circumstances be associated with the other writings in the ascertainment of whether they all comply with the above enunciated rules."

––––––

DISSENTING OPINION BY MR. JUSTICE COHEN:

Since the majority has decided to dispose of this case in a per curiam opinion, in order to put this dissent in a proper perspective, it is necessary at the outset to detail the factual background giving rise to the matter in dispute.

On November 8, 1964, Charles J. Meyer, Jr., died unmarried and without issue. His only heirs surviving him are his nephews, Charles F. Meyer and John W. Meyer, appellants. On the day following decedent's death, three friends of decedent went to his home to get clothes for his funeral and if possible to see if there was a will. In their search they found some keys, one of which was used to open a tool chest located at the end of decedent's bed. Four papers all folded transversely were discovered on the top tray of the tool chest. All the papers found were undisputedly in the handwriting of decedent. Three of the papers

were offered for probate as decedent's last will and testament.

The first sheet of paper contains burial instructions, a clause for payment of debts and funeral expenses and six numbered paragraphs containing various specific bequests. At the end of that paper decedent's signature appears. The next paper which was not physically attached to the first consists of numbered paragraphs seven to twelve, two of which provide for specific bequests to two churches, one is the residuary clause, one names the executors, one gives the location of decedent's safe deposit box, and the last paragraph provides seven specific bequests to seven friends of the decedent. Decedent's signature does not appear at the end of that paper. The third paper, which was also not attached physically to any of the other papers is entitled "Estate Inventory of Charles J. Meyer, Jr. Feb. 28, 1963" (the same date as found on the top of the first paper). This paper contains a list of the assets of the decedent as of that date and bears decedent's signature at the bottom of the page.

After hearing, the register of wills admitted these three papers for probate. An appeal therefrom was taken to the Orphans' Court of Philadelphia County and, after a hearing, the court upheld the probate of the three papers. Exceptions were filed which were dismissed and a final decree entered. From that decree the instant appeal was taken.

The crux of this case involves a very narrow issue: Is the requirement of §2 of the Wills Act of 1947, 20 P.S. §180.2, that *"Every will,* . . . shall be in writing and *shall be signed* by the testator at the end thereof" fulfilled, as a matter of law, by the unattached three papers, the third of which is signed by decedent at the bottom of the page?

There is no question that a valid will may be written on separate, and physically unattached sheets of

paper if the last page *of the will* is signed at the bottom by the testator. *Covington Estate,* 348 Pa. 1, 33 A. 2d 235 (1943). Thus we must determine whether the third paper which specifically enumerates decedent's assets as of that date can be said to form part of decedent's will. The majority by affirming the judgment of the court below must necessarily conclude that the third paper forms an integral part of the will. I disagree. The law is clear with respect to the criteria used in determining when physically unconnected papers may be considered as one will. In determining whether such papers constitute a valid will, the test is whether or not it appears that they are connected by logical and grammatical sequence, by their internal sense, by coherence or adaptation of parts and that decedent's signature appears at the spatial, logical and sequential end of his dispositive act of testamentary disposition. For this general rule see *Van Gilder Will,* 421 Pa. 520, 220 A. 2d 21 (1966) ; *Covington Estate,* supra; *Davis' Estate,* 344 Pa. 520, 26 A. 2d 339 (1942) ; *Baker's Estate,* 331 Pa. 33, 200 Atl. 65 (1938) ; *Fisher's Estate,* 283 Pa. 282, 129 Atl. 90 (1925) ; *Maginn's Estate,* 281 Pa. 514, 127 Atl. 79 (1924).

In my view the third paper listing decedent's assets fails to meet the required test, i.e., it is not connected by internal sense, by coherence or adaptation of the various parts; nor does decedent's signature appear at the logical end of his testamentary disposition. The third paper in no way disposes of any assets; does not contain any administrative provisions and is completely unnecessary to the disposition of decedent's estate. Merely listing one's estate inventory on a separate sheet of paper does not render such paper an integral part of the testamentary instrument, since it has nothing whatsoever to do with decedent's testamentary desires. Consequently, I would conclude that the spatial and logical end of decedent's will was at the end of

the second paper, which paper was not signed by decedent at the end thereof and hence not a properly executed will as required by the Wills Act of 1947. Despite the fact that decedent's testamentary intentions may very well be frustrated, these intentions cannot overcome the clear legislative mandate under the Wills Act. As we said in *Brown Estate,* 347 Pa. 244, 32 A. 2d 22 (1943), "The purpose of the Act was to remove all possibility of fraud. . . . Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well established mandate of the legislature. Were we to do so, we might in future cases facilitate fraudulent or unauthorized alterations or additions to wills." See *Brown Will,* 419 Pa. 418, 423, 214 A. 2d 229 (1965). Since the court below sustained the validity of the will and the majority has seen fit to do likewise, I must sadly comment that this weakening of the Wills Act paves the way for all sorts of possible fraudulent practices.

I dissent.